CAPITAL NATIONAL BANK AND KENT K. HAYDEN, RE-
CEIVER, V. COLDWATER NATIONAL BANK ET AL.

FILED DECEMBER 2, 1896. No. 7346.

1. **Banks and Banking:** RECEIVERS: TRUST FUNDS. A fund which comes into the possession of a bank with respect to which the bank has but a single duty to perform, and that is to deliver it to the party thereto entitled, is a trust fund and is therefore incapable of being commingled with the general assets of such bank subsequently transferred to its receiver.

2. ——: ——: ——. Under the circumstances above indicated the receiver of the bank is merely substituted as trustee, and its funds in his hands should be devoted to discharging such trust before distribution thereof is made to the general creditors of the bank.

3. **Interest: TRUST FUNDS.** Under the provisions of chapter 44, Compiled Statutes, the *cestui que trust* is entitled to seven per cent interest per annum on the trust fund above considered.

ERROR from the district court of Lancaster county. Tried below before STRODE, J.

See opinion for cases referred to by counsel.

*Cobb & Harvey* and *G. M. Lambertson,* for plaintiff in error.

*Pound & Burr, Darnall & Kirkpatrick,* and *Charles O. Whedon, contra.*

RYAN, C.

There were submitted with this case on the oral argument four others which involved the same question. These were the Coldwater National Bank v. Charles E. Magoon et al., Capital National Bank v. First National Bank of Cadiz, Hayden, receiver of the Capital National Bank, v. Genesee Fruit Co., and Hayden, Receiver, v. Samuel Cupples Woodenware Co. All five of the cases had been determined adversely to the receiver of the Capital National Bank, in the district court of Lancaster county, and were in this court presented upon as many records. It is not necessary to state the facts involved in each, for the sole question presented is fully illustrated by the facts of this particular case.

The Coldwater National Bank, in October, 1892, was doing a banking business at Coldwater, Michigan. At that time the Capital National Bank was engaged in a like business in Lincoln, Nebraska. On the 22d of said month the Hemingford Bank and Job Hathaway executed their promissory note to the Capital National Bank for the sum of $4,000, due in ninety days from its date. On the same day this note was indorsed, without recourse, by the payee, Charles W. Mosher, its president, and R. C. Outcalt, its cashier, and sold to the Coldwater

National Bank. The Hemingford Bank had with the Capital National Bank a sufficient current account to cover all the payments which it attempted to make as hereinafter described, and was not aware that the aforesaid note had been sold. On December 7, 1892, the cashier of the Hemingford Bank sent his check on the Hemingford Bank to the Capital National Bank with instructions that the same should be indorsed on the said note. This note was received by the Capital National Bank from the Coldwater National Bank for collection on January 10, 1893, and on the 20th of said month, having received $2,500, the balance due thereon, the Capital National Bank returned said note, duly canceled, to the Hemingford Bank. The Capital National Bank ceased to do business on January 21, 1893, and on the next day was taken possession of by a national bank examiner, by whom its assets were soon afterwards turned over to a receiver of said bank duly appointed by federal authority. It was insolvent when the examiner went into possession, and had never remitted the above $4,000, or any part of it, to the Coldwater National Bank. This action was brought in equity for a judgment requiring full payment of the above $4,000, with interest, out of the funds of the Capital National Bank in the hands of the receiver. On the trial it was shown that when the Capital National Bank was taken possession of by the receiver it had on hand $11,000 in cash. The district court, by its judgment, required the receiver to pay in full the said sum of $4,000, with interest as prayed, on the theory that this amount was a trust fund which, as such, had come into the hands of the receiver.

It is conceded by the plaintiff in error that the relief granted by the district court was in conformity with the views expressed more or less directly by this court in *Wilson v. Coburn*, 35 Neb., 530, *Anheuser-Busch Brewing Association v. Morris*, 36 Neb., 31, *Griffin v. Chase*, 36 Neb., 328, and *State v. State Bank of Wahoo*, 42 Neb., 896, but it is urged that a re-examination of the principles involved

should satisfy us that these cases proceeded upon an erroneous view of the law as now settled. A very careful examination has been made of all cases cited in respect to the pivotal question which has already been sufficiently indicated as having been acted upon by the district court. Of those cited by the defendant in error the following are more or less directly in point, to-wit: *Peak v. Ellicott*, 30 Kan., 156; *Myers v. Board of Education*, 51 Kan., 87; *Van Allen v. American Nat. Bank*, 52 N. Y., 1; *People v. City Bank of Rochester*, 96 N. Y., 32; *Baker v. New York Exchange Bank*, 100 N. Y., 31; *Cragie v. Hadley*, 99 N. Y., 131; *Importers & Traders Nat. Bank of New York v. Peters*, 123 N. Y., 272; *Elmira Savings Bank v. Davis*, 142 N. Y., 590; *Farmers & Mechanics Nat. Bank v. King*, 57 Pa. St., 202; *Harrison v. Smith*, 83 Mo., 210; *Stoller v. Coates*, 88 Mo., 514; *Third Nat. Bank of St. Paul v. Stillwater Gas Co.*, 36 Minn., 75; *Davenport Plow Co. v. Lamp*, 80 Ia., 722; *Independent District of Boyer v. King*, 80 Ia., 497; *Nurse v. Satterlee*, 81 Ia., 491; *Continental Nat. Bank v. Weems*, 69 Tex., 489; *Smith v. Combs*, 49 N. J. Eq., 420; *Jones v. Kilbreth*, 49 O. St., 401; *First Nat. Bank of Central City v. Hummel*, 14 Colo., 259; *In re Johnson*, 61 N. W. Rep. [Mich.], 352; *Howard v. Walker*, 21 S. W. Rep. [Tenn.], 897; *San Diego County v. California Nat. Bank*, 52 Fed. Rep., 59; *Massey v. Fisher*, 62 Fed. Rep., 958; *First Nat. Bank of Montgomery v. Armstrong*, 36 Fed. Rep., 59; *Foster v. Rincker*, 35 Pac. Rep. [Wyo.], 470; *Central Nat. Bank v. Connecticut Mutual Life Ins. Co.*, 104 U. S., 54; *St. Louis & S. F. R. Co. v. Johnston*, 133 U. S., 566; *Peters v. Bain*, 133 U. S., 670; *Knatchbull v. Hallett*, 13 Ch. Div. [Eng.], 696.

In the cases cited in this controversy there are two classes, one of which proceeds upon the theory that a lien may be enforced against the specific deposit so long as it can be actually identified, or should be held segregated by implication of law on account of a fraudulent concealment by the officers of the bank of its insolvent condition when receiving a very recent deposit, whereby the depositor was induced to make such deposit. The other

treats the deposit as in its essence a trust fund, incapable in its very nature of being commingled with other funds. In argument it was insisted, on behalf of the plaintiff in error, that in any event there must be an identification of the fund proposed to be charged as being composed, in part at least, of the very money which had come into the hands of the receiver. In support of this contention there were cited *Wasson v. Hawkins*, 59 Fed. Rep., 233, *Boone County Nat. Bank v. Latimer*, 67 Fed. Rep., 27, *Lake Erie & W. R. Co. v. Indianapolis Nat. Bank*, 65 Fed. Rep., 690, *Northern Dakota Elevator Co. v. Clark*, 53 N. W. Rep. [N. Dak.], 175, *Standard Oil Co. v. Hawkins*, 74 Fed. Rep., 395, and *Spokane County v. Clark*, 61 Fed. Rep., 538. These adjudications insisted upon a specific identification to entitle to equitable relief, but they are of little value in this case, because they belong in the first of the two classes above indicated. They furnish no light as to the principle applicable to the second class, and it is with that class that we are at present concerned. As illustrative of the confusion into which it is easy to fall in this matter, we refer to *Philadelphia Nat. Bank v. Dowd*, 38 Fed. Rep., 172, cited by the plaintiff in error. In this case it was sought to impress upon a fund in the receiver's hands a trust, because as such it had been deposited in the bank, the relation of debtor and creditor being expressly disclaimed. The judge of the federal court who heard and determined this case ignored the distinction, which should have been recognized, and enforced the rule applicable where it is sought to reclaim the money actually deposited, and, a specific deposit not having been traced into the hands of the receiver, there was a denial of equitable relief. For this reason we cannot see that the *Philadelphia Nat. Bank v. Dowd, supra*, should have any special weight in the determination of the question with which we are now concerned, and in this view we are in accord with the conclusions reached in *Massey v. Fisher*, 62 Fed. Rep., 958, as to the value of this very case.

Another adjudication in which there seems to have

been misapprehended an opinion of the supreme court of the United States was *Anheuser-Busch Brewing Association v. Clayton*, 6 U. S. C. C., 108. The opinion of the supreme court referred to was announced by Brewer, J., and held simply that where current collections had been entrusted to a bank under an agreement that on the 1st, 11th, and 21st of each month remittances of the aggregate amounts meantime collected should be made, that as to these accumulations there existed merely the relation of debtor and creditor between the bank and the party for whom such collections had been made, and that therefore no trust relation existed. (*Commercial Bank of Pennsylvania v. Armstrong*, 148 U. S., 50.) It is possible that the court of appeals, which announced its opinion on May 22, 1893, may not have noted that the supreme court, in its opinion announced on March 6, 1893, while it affirmed the opinion of the inferior court, did so upon a distinctly different ground from that upon which the inferior court had proceeded. Whether or not there was the oversight indicated, one thing is very clear to our minds, in view of the history of *Commercial Bank of Pennsylvania v. Armstrong*, and that is that the case of *Anheuser-Busch Brewing Association v. Clayton* is not entitled to the weight claimed for it by the plaintiff in error.

In *People v. Merchants & Mechanics Bank*, 78 N. Y., 269, cited by the plaintiff in error, there was charged on the books of the bank the amount of a draft drawn through the bank upon one of its customers, but the drawer was not accordingly credited, and this omission was held of controlling force in determining that there existed between the bank and drawee the relation of debtor and creditor, and that as between the bank and the drawer there was no such relation. It seems to us that this was rather a strained statement of the relation of the parties concerned, for the bank issued and sent to the drawer above indicated its draft for the amount of the collection charged against its customer, and any entry it might have made in its books could not have more unequivocally

manifested its relation of trustee towards the party by whom it had been trusted to make such collection.

In *Frank v. Bingham*, 58 Hun [N. Y.], 580, it was held that as the proceeds of a note entrusted to the bank for collection had not been actually traced into the hands of the receiver of the bank, there existed no right to have declared a special lien upon the assets of such bank in favor of the payee of this note. Substantially the same rule was acted upon in *Bank of Commerce v. Russell*, 2 Dill. [U. S. C. C.], 215, and we cannot but think that in thus denying the right to equitable relief for the reason indicated these courts too much restricted the rights of the plaintiff to equitable relief, for in each of them the relation of trustee and *cestui que trust*, and their incidental liabilities and rights, were completely ignored.

This completes a review of all the cases cited by the plaintiff in error which we find in any degree applicable to the question urged, and these certainly are not so convincing in their reasoning, nor so clearly in point, that, in the face of the great array of judicial determinations cited by defendant in error, we should feel bound to recede from the line indicated by the cases already decided by this court. It seems, however, to be assumed that this line has been adopted by reason of the ruling of the supreme court of Wisconsin in *McLeod v. Evans*, 66 Wis., 401, cited with approval in some of our cases, and that the subsequent change of front by that court in *Nonotuck Silk Co. v. Flanders*, 58 N. W. Rep. [Wis.], 383, necessitates a corresponding tactical movement on the part of this court. In neither of these cases did the supreme court of Wisconsin act with the unanimous assent of all its members. The reasoning of the majority of the court found in *McLeod v. Evans* seemed to us very satisfactory, and it is none the less so because it is now merely questioned by another majority of that court entertaining other views. If the supreme court of Wisconsin had been a unit in either opinion it would have been valuable only as a precedent. In no sense would it have constituted

an authority. The later reasoning of a majority of the members of that court has been carefully considered, and in it we find no sufficient argument to convince us that we should recede from the line of our former opinions.

The judgment of the district court required the payment of interest on the sum which the receiver was thereby adjudged to pay to the defendant in error. It is argued that as its claim is for specific moneys deposited, the relief must be limited to that sum, and that therefore no interest was allowable. It is probably true that this result would follow in the absence of a controlling statute, but this we need not consider, for it is provided in chapter 44 of the Compiled Statutes that interest shall be at the rate of seven dollars for each one hundred dollars, annually, "on money received to the use of another and retained without the owner's consent, express or implied." The rate of interest fixed by the district court was conformable to this legislative enactment and was, therefore, proper. The judgment of the district court is

AFFIRMED.