PAGE COUNTY, IOWA, Appellee, v. ED. F. ROSE, and CHARLES HART, as Assignees of LUTHER VAN ARSDOL, insolvent, and M. GRAUSS and others, creditors of said insolvent debtor, Appellants.

**Insolvency:** TRUST FUNDS: PREFERRED CLAIMS. Where a county
1 treasurer, without authority, deposited tax receipts with a bank for collection and the collections were made, either in cash or by charging the amounts to the accounts of depositors, and the bank credited the treasurer as such, with the fund knowing it belonged to the county, the bank on becoming insolvent was chargeable with the fund as a trustee and the county had a preferred claim therefor.

**Same.** Ordinarily a bank in making collections for another be-
2 comes a trustee of the fund collected, and the trust can be established against the insolvent estate of the bank in the hands of a receiver or assignee.

*Appeal from Page District Court.*— HON. O. D. WHEELER, Judge.

TUESDAY, APRIL 3, 1906.

THE opinion states the case.— *Affirmed.*

*Parslow & Peters,* for appellants.

*H. H. Scott* and *D. G. Sutherland,* for appellee.

WEAVER, J.— For several years Luther Van Arsdol, under the business name and style of the Bank of Coin, conducted a private banking business at the town of Coin, in Page county, Iowa. On the 9th day of March, 1904, Van Arsdol, having become insolvent, made a general assignment under the insolvency statute of the state to Ed. F. Rose and Charles Hart for the benefit of his ' creditors. Prior to the insolvency and assignment of Van Arsdol, and beginning January 6, 1902, an arrangement existed between the bank and the treasurer of Page county, one W. L. Lundy, whereby the tax receipts of persons living in the vicinity of Coin were sent to the bank, with authority to the bank to receive the money thereon and deliver the receipts to the parties paying the same. The account thus created in favor of the treasurer was checked or drawn upon by him from time to time. The account was kept in the name of "W. L. Lundy, Treasurer," and it was known by the bank at all times that this account represented a balance due said treasurer or the county for taxes collected as aforesaid. During the period referred to the bank collected and received from taxpayers for treasurer's receipts surrendered by it an aggregate sum of $5,919.95, and at the time of the assignment of Van Arsdol the balance due to the treasurer on this account was $1,199.47, for which sum the county filed a claim against the insolvent's estate, asking that the same be established as a preferred claim and paid in full before any distribution to the general creditors. It is agreed by the parties that payments of the taxes to the bank was effected, in part by payments in cash, and in part by the checks of the taxpayers upon deposits held for them by the bank, and in other cases the bank charged the amount of the tax receipts against the deposit accounts of their

customers. In the latter instance, if we understand the record, the bank made use of the tax receipts as credit vouchers, instead of taking checks therefor. On taking possession of the assets of the bank the assignees found on hand cash to the amount of $866.88 and other assets, making the entire appraised value of the estate about $21,000. There have been presented and filed general claims against the estate to the amount of about $63,000, and other claims for which a preference is demanded to the amount of about $3,100. The trial court found in favor of Page county, giving preference to its said claim and ordering the assignees to pay the same in full. From this judgment the assignees and objecting creditors appeal. There is no dispute as to the material facts, and the one legal question presented is whether upon the conceded facts the moneys obtained by the bank for taxes due the county should be treated as a trust fund and given a preference over the claims of the general creditors.

Appellant contends that the transaction on which the account or claim presented by the county was not in fact a payment of taxes. In other words it is said that the county received nothing and has parted with nothing, and stands in no better position to assert a preferred claim than would the treasurer himself. But this is not quite correct. The treasurer had a right to collect the taxes and to bind the county by delivering proper receipts therefor. It is possible, however, that if the receipts had never been delivered, or if it were practicable to ascertain just what receipts issued through the bank were represented by the unpaid balance of $1,199.47, the county could repudiate the transaction and enforce a second payment thereof; but this is a question we do not attempt to decide. The treasurer did issue through the bank receipts to the gross amount of $5,919.95, and the bank acknowledged the receipt by itself of that amount of money. The admitted sum has been reduced by payments

1. INSOLVENCY: trust funds: preferred claims.

anl credits to a remainder of less than $2,000, and it is impossible to name with any certainty the particular taxpayers whose money is represented thereby. The county treasury is depleted by that sum as fully and completely as if the treasurer had taken the money from his office safe and deposited it in the bank on the day before the assignment of its proprietor. No corruption is charged or suggested against the treasurer, and we may also for the purposes of this case assume that the transactions on part of Van Arsdol were carried on with entire good faith.

It is matter of common knowledge that in most of our counties a very large fraction of the taxes is collected by and through banks doing business in towns other than the county seat, and that the custom is one of much convenience and advantage to a large number of the taxpayers. But while this is true, it remains equally true that the treasurer in doing so exceeds the strict letter of his authority, and the loss by the failure of a bank holding moneys thus received is primarily his loss. It is, however, within the right of the county, which traces its moneys thus collected into the hands of the bank, to demand and recover it. In the legal sense of the word the deposit of the money in the bank, or its retention by the bank, is wrongful, and it holds such money charged with a trust in favor of the real party in interest. On this and other propositions involved in this appeal, see *Taylor County v. Standley,* 79 Iowa, 670; *Smith v. Bank,* 107 Iowa, 624; *Plow Co. v. Lamp,* 80 Iowa, 723; *Cook v. Tullis,* 85 U. S. 341 (21 L. Ed. 933); *Mc-Clure v. La Plata Co.,* 19 Colo. 122 (34 Pac. 763); *State v. Bevers,* 86 N. C. 594; *Kirby v. Wilson,* 98 Ill. 240; *Frigh v. Gartland,* 2 Hen. & M. 417; *Englar v. Offutt,* 70 Md. 78 (16 Atl. 497, 14 Am. St. Rep. 332); *Harrison v. Smith,* 83 Mo. 210 (53 Am. Rep. 571); *Bank v. Ins. Co.,* 104 U. S. 54 (26 L. Ed. 693); *Brewing Association v. Morris,* 36 Neb. 33 (53 N. W. 1037); *Capital Bank v. Coldwater Bank,* 49 Neb. 789 (69 N. W. 115, 59 Am. St.

Rep. 572); *Foster v. Rincker,* 4 Wyo. 492 (35 Pac. 470); *Bank v. Weems,* 69 Tex. 500 (6 S. W. 802, 5 Am. St. Rep. 85) *Peak v. Ellicott,* 30 Kan. 162 (1 Pac. 499, 46 Am. Rep. 90); *McLeod v. Evans,* 66 Wis. 401 (28 N. W. 173, 214, 57 Am. Rep. 287); *Bank v. Hummel,* 14 Colo. Sup. 259 (23 Pac. 986, 8 L. R. A. 788, 20 Am. St. Rep. 257); *Myers v. Board,* 51 Kan. 87 (32 Pac. 658, 37 Am. St. Rep. 263); *Plano Mfg. Co. v. Auld,* 14 S. D. 510 (86 N. W. 21, 86 Am. St. Rep. 769).

The subject is one not without difficulty and the decisions of the courts thereon are not in all respects harmonious, but we regard the rule of the cases cited the better one and think the case at bar comes fairly within it. Even if, as appellant claims, the receiving of these taxes by the bank was rightful there is another rule recognized by the authorities generally and by many of the cases above cited, that a bank which receives a claim for collection is ordinarily chargeable as a trustee of the moneys thus collected and the person entitled thereto may establish such trust against the insolvent estate of such bank in the hands of its receiver or assignee. The bank in this case was sent specific tax receipts for collection and the claim of the county is for moneys thus collected and upon this ground alone we think the order of the district court may well be sustained. The cases of *Officer v. Officer,* 120 Iowa, 389, and *Hunt v. Hopley,* 120 Iowa, 695, cited by appellant are not in point. In the former case the depositor was an administrator, and in the latter a treasurer of a school district. In neither case did the statute provide any specific place for the deposit or safe keeping of the funds and we held that the depositing thereof in a bank apparently solvent and in good standing in the business community was not a wrongful act. But this has no application to a county treasurer who is expressly forbidden to deposit the public funds anywhere except in the vaults of the treasury, or in banks duly designated and qualified

2. SAME.

under the statute providing therefor.   Nor is the rule of *Jones v. Chesebrough,* 105 Iowa, 303, applicable here.   In that case, as in the Officer Case, the deposit was rightful, and, when the bank thereafter became insolvent, the depositor was held to have no preference over other general depositors.

We find no error in the record, and the judgment of the trial court is *affirmed.*