FRANK W. WHITCOMB, Apellant, v. L. M. CARPENTER, Assignee of E. E. Snyder, Appellee.

134    227
f139    90

**Banks and banking:** INSOLVENCY: CLAIMS: PREFERENCE. An in-
1   solvent banker who sells a draft, knowing that his corre-
spondent has no funds with which to pay the same, obtains
money therefor wrongfully and holds it in trust for the pur-
chaser; and a claim therefor against his estate is entitled to
preference.

**Same.** Moneys received by an insolvent bank to be applied to a
2   particular debt, or to be remitted to a creditor of the person
paying the same, are regarded as trust funds and ordinarily
entitled to preference over claims of general creditors in the
distribution of the assets of the insolvent bank; and this right
cannot be defeated by a showing that the assets of the bank in
the hands of an assignee for the benefit of creditors is less than
when the money was received by it.

*Appeal from Jones District Court.*— HON. B. H. MILLER, Judge.

WEDNESDAY, MAY 8, 1907.

THE opinion states the case.— *Reversed.*

*Dale & Harrison,* for appellant.

*Jamison & Smyth* and *Park Chamberlain,* for appellee.

WEAVER, C. J.— One E. E. Snyder, doing business as a private banker, under the name of " Bank of Olin," be-came insolvent, and made an assignment to the defendant herein for the benefit of his creditors on December 13, 1904. A few days prior to the assignment, and at a time when he knew he was insolvent, and knew that he had no funds in the hands of his correspondent bank at Chicago, Snyder sold to the plaintiff a draft on said correspondent for $190,

and demanded and received for the same from the plaintiff the full par value of such draft. On being presented to the Chicago bank, the draft was dishonored, and, Snyder having failed to pay or return the money so received, plaintiff filed claim therefor against the defendant as assignee, and asked that it be allowed as a preferred claim. It is further shown, without dispute, that prior to the date of said draft the plaintiff herein had made and delivered his promissory note to Snyder for $600, and that the same was outstanding, and in part at least unpaid. It appears, however, that Snyder had pledged or deposited said note with one Rummell as collateral security for a debt due from him to said Rummell, but the fact of such transfer was unknown to the plaintiff. After giving said note, but whether before or after it was transferred to Rummel is not made clear, the plaintiff paid or sent to Snyder, to be applied upon said note, several sums, aggregating $175. For $150 of this money Snyder gave a receipt to the plaintiff, stating that said moneys were received by him " for credit on note." For the remaining sum of $25 no receipt is shown, but its payment by the plaintiff is not disputed. None of these payments were ever indorsed or applied upon plaintiff's note, but it is conceded that the moneys so received were by Snyder mingled with the funds of the bank and appropriated to its use. For this sum of $175 the plaintiff filed his claim against the assignee, and, as in the other case, asked that it be allowed as a preferred claim, in the event that, for any reason, it could not be applied and indorsed upon or set off against his said note. As Rummell, the holder of the note, was not a party to the proceeding, it appears that the prayer of the plaintiff to have his claims applied as payments upon the note referred to was denied, and of this ruling no complaint is made. The district court found that Snyder was justly indebted to plaintiff to the full amount of the claims in controversy, but ruled that neither of said claims should be given any preference over those of the general creditors. From

this ruling an appeal has been taken by the plaintiff to this court.

In at least two recent cases, this court has had occasion to consider the extent to which moneys wrongfully received by or deposited in a bank may be treated as trust funds, and

1. BANKS AND BANKING: insolvency: claims: preference. claims therefor given preference over those of general creditors. See *Page County v. Rose,* 130 Iowa, 296; *Officer v. Officer & Pusey,* 127 Iowa, 347. The doctrine there approved and applied governs the case now before us, and requires us to hold that the district court erred in refusing the preference which plaintiff demanded. We think it unnecessary to again review the authorities upon this point. It is sufficient to say that the act of Snyder in taking the money of the plaintiff for the draft which he knew was worthless, and which he had no assurance would be honored when presented for payment, was as wrong in law as it was reprehensible in morals. The money was not given to him as a deposit, nor as a loan. He received it upon his expressed or implied representation that he had such moneys or credit with his Chicago correspondent that, upon presentation of the draft, a like sum would be paid to the plaintiff. That representation he knew to be untrue, and he must be held to have received the money wrongfully, and to hold it in trust for the person who paid it to him.

As to the other item, there is even less doubt. As suggested by us in *Page County v. Rose, supra,* it is a well-established rule that moneys received by a bank to be ap-

2. SAME. plied as payments upon a particular debt, or to be remitted to some creditor of the person paying such sums, are regarded as trust funds, and a claim therefor is ordinarily entitled to preference over the claims of general creditors in the distribution of the assets of the insolvent bank. See *Nurse v. Satterlee,* 81 Iowa, 491; *McCleod v. Evans,* 66 Wis. 401 (28 N. W. 173, 57 Am. Rep. 287); *Central Bank v. Life Ins. Co.,* 104 U. S. 54 (26 L.

Ed. 693); *Brewing Ass'n v. Morris,* 36 Neb. 33 (53 N. W.
1037); *Capital Bank v. Coldwater Bank,* 49 Neb. 789 (69
N. W. 115, 59 Am. St. Rep. 572); *Foster v. Rincker,* 4 Wyo.
484 (35 Pac. 472); *Bank v. Weems,* 69 Tex. 497 (6 S. W.
802, 5 Am. St. Rep. 85; *Bank v. Latimer,* 67 Fed. 30; *Sher-
wood v. Bank,* 103 Mich. 116 (61 N. W. 352); *Plow Co. v.
Lamp,* 80 Iowa, 725; *Peak v. Ellicott,* 30 Kan. 162 (1 Pac.
499, 46 Am. Rep. 90). Snyder confessedly received this
sum of $175 to be applied as payment upon plaintiff's note,
and it was his duty to make the proper indorsement of such
payment, if the note was still in his hands; or, if the note had
been transferred to another, it was equally his duty to turn
over the payment so received to the person holding the paper.
He failed to do so, and mingled the funds with those of the
bank, and, under the rule of the authorities to which we
have referred, is chargeable as trustee to that amount. The
cases relied upon by the appellee, *Jones v. Chesebrough,* 105
Iowa, 303, and *Bradley v. Chesebrough,* 111 Iowa, 126,
are not in point, and do not announce a rule inconsistent
with the one which we here apply. In each of the cited
cases action was brought by a depositor who had deposited
money held by him in a trust capacity with a bank which
afterward became insolvent, and it was sought to obtain
preference on the theory that the trust character of the
funds in the hands of the depositor followed and attached
said funds in the hands of the bank. In neither case was
the deposit or the possession of the funds wrongful. See,
also, *Hunt v. Hopley,* 120 Iowa, 700; *Officer v. Officer,* 120
Iowa, 389. In the case of *Smith Bros. v. Bank,* 107 Iowa,
624, we held that, where a bank receives money wrongfully,
" a trust arises as between it and the true owner of the
money, for it is a general rule that any one wrongfully pos-
sessed of an estate becomes a trustee *ex maleficio,* and is
answerable to the party injured as *cestui que* trust."

Council for appellee seek to avoid the effect of our for-
mer decisions, by claiming that the record in the present

case shows affirmatively that the assets of the bank in the hands of the assignee were in no manner increased by reason of the wrongful act of Snyder in the sale of the worthless draft, or in the collection of the moneys which he wrongfully failed to apply upon the plaintiff's note. This proposition of fact is said to be supported by evidence offered on part of the defendant showing that, from the time these moneys were received by Snyder, down to the date when he made the assignment for the benefit of his creditors, the assets of the bank and the funds on hand had decreased, with the result that the value of the assets turned over to the assignee was only about $42,000, while the liabilities of the insolvent bank amounted to about $165,000. But the mere fact that the moneys and credits which went into the hands of the assignee were less than those which Snyder had on hand at the time when he became chargeable as trustee does not avoid the proposition that the amount which he thus received was larger than it would have been had Snyder not appropriated and put into the funds of the bank these moneys which he should have otherwise applied. The money was mingled with the funds of the bank which were certainly increased by that amount, and the trust character of the sum so appropriated operates to create a lien for its amount upon the entire fund with which it was mingled, and when thereafter the fund is diminished by withdrawals therefrom by the trustee, he is presumed to have withdrawn his own moneys, and, so long as the balance left on hand is equal to or greater than the trust fund, the right of the *cestui que* trust to have it applied to the payment of his claim remains unimpaired. *Sherwood v. Bank,* 103 Mich. 109 (61 N. W. 352); *Peak v. Elliott,* 30 Kan. 156 (1 Pac. 499, 46 Am. Rep. 90); *McLeod v. Evans,* 66 Wis. 409 (28 N. W. 173, 214, 57 Am. Rep. 287). In the latter case, the Wisconsin court says of a case presenting features similar to the one at bar: " The conclusion is irresistible that the proceeds of the trust property [a draft] found its way into

Hodge's hands, and were used by him to pay off his debts or increase his assets. In either case it would go to the benefit of his estate. It is not to be supposed that the trust fund was lost and dissipated altogether, and did not fall into the mass of the assignor's property, and the rule in equity is well established that, so long as trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust." See, also, *People v. Bank,* 96 N. Y. 32; *Bank v. Gas. Co.,* 36 Minn. 75 (30 N. W. 440). In *Boyer v. King,* 80 Iowa, 498, this court quoted approvingly the ruling in the *McLeod* case, *supra,* saying that, as the banker received the money wrongfully, " it will be presumed, in the absence of a showing to the contrary, that it was preserved by them in some form, and that it passed into the hands of their assignee. It is not material, for the purposes of the case, whether the balance was preserved in the form of money or other property. It is only necessary that it appear by presumption of law, or otherwise, that it has been preserved in the hands of the defendant." That presumption we think exists, and is not overcome by the mere fact that the assets received by the assignee were less than Snyder may have held immediately before receiving the trust fund.

For the reasons stated, the ruling of the district court refusing preference to plaintiff's claim is reversed, and cause remanded for further proceedings in harmony with this opinion.— *Reversed.*