## PARKER STATE BANK v. PENNINGTON. HOOD et al. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. November 14, 1925.)

Nos. 6994, 6995.

1. **Banks and banking ⬦153—Money deposited with bank in escrow pending delivery of abtract held not "special deposit."**

Money deposited with bank in escrow pending delivery of abstract showing merchantable title is not a "special deposit," which consists in the placing of specific kinds of money or property in possession of bank with an obligation of the bank to return identical thing deposited; depositor retaining title.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Special Deposit.]

2. **Escrows ⬦8(1)—Action for conversion of money deposited with bank in escrow not maintainable.**

Purchaser placing money in escrow with bank was not entitled to maintain action against bank for conversion, as such action does not lie, unless there was an obligation to return the specific or identical money intrusted to bank.

3. **Escrows ⬦15—Bank with whom money was deposited in escrow pending delivery of abstract is trustee of an express trust for benefit of depositor.**

Deposit of money in escrow with bank pending delivery of abstract showing merchantable title which was not furnished *held* to charge

bank with contractual obligation to return money, and to constitute bank trustee of an express trust for benefit of depositor.

4. **Trusts ⬦359(1)—Cestui que trust may elect to proceed against trustee personally for breach of trust by misappropriation.**

Cestui que trust has right to elect to proceed against trustee personally for any breach of trust by a misappropriation of funds, and may sue in equity for an accounting, or bring suit at law in nature of assumpsit for money had and received.

5. **Trusts ⬦359(1)—Every person who receives money to be paid to another is a trustee, and may be sued either at law or in equity for breach of trust.**

Every person who receives money to be paid to another or to be applied to particular purpose, to which he does not apply it, is a trustee, and may be sued either at law for money had or received or in equity as a trustee for breach of trust.

6. **Pleading ⬦49—Nature of cause of action depends on facts pleaded in complaint as a whole.**

Nature of cause of action depends on facts pleaded in complaint as a whole, and, if it alleges an action upon a contract, plaintiff is entitled to recover thereon, although plaintiff alleges a conversion and remedies ex delicto are asked.

7. **Escrows ⬦15—Cause of action, as trustee of express trust, held stated, but not cause of action in conversion.**

Complaint against bank and officers thereof for conversion of money deposited in escrow *held* to state cause of action against bank, as trustee of express trust for money had and received, but not in conversion, nor against officers.

8. **Escrows ⬦15—Under contract providing for deposit of certain payments in escrow, bank held not obligated as trustee on first two payments.**

Under contract providing for deposit of payments in escrow, pending delivery of abstract showing merchantable title, *held*, that down payment of $2,000 and further payment of $2,000 were not made to bank as trustee, but as vendor's agent, and it was not liable to purchaser therefor as trustee.

9. **Escrows ⬦15—Writings showing conduct of purchaser at variance with claim that deed had not been delivered, and that he had not accepted title to land, should have been admitted in evidence.**

In action to recover money deposited in escrow with bank pending delivery of abstract, letter of purchaser and answer in another action *held* admissible, as showing conduct of purchaser at variance with his claims that deed was not delivered and that he had not accepted title.

10. **Evidence ⬦258(1)—Letters of attorney properly excluded, where sufficient foundation of authority not shown.**

In action to recover money deposited with bank in escrow, letters from plaintiff's attorney

were properly excluded, where evidence did not show sufficient foundation of authority for attorney to speak for plaintiff.

In Error to the District Court of the United States for the District of Colorado; John Foster Symes, Judge.

Action by Harley L. Pennington against the Parker State Bank, Fred B. Hood, Harold A. Senter, and another. From a judgment for plaintiff against the defendants named, defendant first named and two defendants last named separately bring error. Reversed, and new trial ordered.

Horace N. Hawkins, of Denver, Colo. (L. W. Cunningham, of Colorado Springs, Colo., on the brief), for plaintiffs in error.

A. X. Erickson, of Denver, Colo., for defendant in error.

Before LEWIS and KENYON, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. Charles B. Ames, by his agent, entered into a written contract with the defendant in error on November 3, 1919, to sell to the latter a tract of land in Colorado. By the terms of the contract the purchase price was $70,000, of which $2,000 was recited as then paid, $2,000 more was to be paid on or before November 18, 1919, and $6,750 was to be paid on or before March 15, 1920. The remainder was to be evidenced by five promissory notes, executed by the purchaser to the vendor, secured by a deed of trust on the land, executed by the purchaser to a designated trustee for the use of the vendor. The principal of the first of these notes was $6,750, due on or before April 1, 1920, and the other notes were payable at later dates. The portion of the contract which is the chief subject of controversy in this proceeding reads as follows:

"Title to the above-described real estate to be a merchantable title, and a good and sufficient warranty deed to be executed and delivered by Charles B. Ames to Harley L. Pennington, or or before the 15th day of March, A. D. 1920; abstract of title to the above-described premises to be delivered to Harley L. Pennington on or before the 10th day of November, A. D. 1919, for the purpose of examination; the said abstract to be returned on or before the 1st day of December, A. D. 1919.

"Provided that the payment of two thousand dollars ($2,000.00) is made on or before the 18th day of November, A. D. 1919, and the payment of six thousand seven hundred and fifty dollars ($6,750.00) is made on or before the 15th day of March, A. D. 1920, and the above-described notes and deed of trust are made and delivered to the said Charles B. Ames; but in the event the above payments are not made, and the said notes and deed of trust are not executed and delivered, then in that event the payments already made shall be forfeited and held by the said Charles B. Ames as liquidated damages; and in the event the said Charles B. Ames refuses to deliver a good and sufficient warranty deed on the payments of the above sums and delivery of the above-mentioned notes and deed of trust, then the said Charles B. Ames shall repay to said Harley L. Pennington the amounts already paid, and an amount equal thereto by way of liquidated damages. And it is further agreed that, in the event the said Charles B. Ames is unable to deliver a merchantable title on the payments of the above sums and delivery of notes and deed of trust, the said payments shall be made and the said notes and deed of trust shall be executed and delivered to the Parker State Bank, Parker, Colorado, to be held by them in escrow until a good and sufficient warranty deed shall be executed and abstract of title delivered showing a merchantable title, not later than the 15th day of September, 1920."

The complaint of the plaintiff alleged that at the date of this contract Charles B. Ames was the president, Harold A. Senter the vice-president, and Fred B. Hood the cashier, of the Parker State Bank, and that Senter later became president of the bank. It also alleged the making of this contract, and that the plaintiff had delivered to the Parker State Bank the sums of money required to be paid to entitle the plaintiff to a deed and to an abstract showing a merchantable title, and had performed all things required by the contract to be done by him on or before March 15, 1920. The complaint then recited that Ames was unable, and failed, to deliver a merchantable title on March 15, 1920, and an abstract as provided in the contract, and alleged that "said moneys then and there became money and things in escrow, and were so received and held" by the defendants pending the delivery by Ames of a sufficient deed and an abstract showing merchantable title, not later than September 15, 1920, and that the defendants converted the money to their own use "by taking it from said escrow," although a sufficient deed and an abstract showing merchantable title was never delivered to the plaintiff, and that the defendants have not paid the money to the plaintiff after de-

mand had been made. It is further alleged that "defendants perpetrated said unlawful act by taking the deed theretofore delivered into escrow" by Ames and placing it of record, and by placing of record the deed of trust mentioned in the contract. Following these allegations, it is alleged that the defendants Hood and Senter "were guilty of fraud and other unlawful conduct in connection with the things complained of," and that plaintiff ought to have execution against the bodies of these defendants, and that the defendants in doing and in connection with the things complained of, were guilty of such fraud and unlawful conduct as should entitle the plaintiff to punitive damages in the sum of $48,750. The prayer was for a judgment for $16,250 actual damages, and for $48,750 punitive damages, and for execution against the bodies of Senter and Hood. The allegations as to fraud and liability for punitive damages were stricken from the complaint on the motion of the defendants.

By the answers the defendants made a general denial, but admitted and alleged that the plaintiff had paid to the bank "under the terms and provisions of the contract set out in plaintiff's amended complaint, on the dates and in the amounts as follows, to wit: November 4, 1919, $2,000; November 17, 1919, $2,000; March 15, 1920, $6,750; June 19, 1920, $3,500; June 25, 1920, $1,-929.23"—the last two payments being made on the promissory notes. They alleged that $10,750 of this money had been paid by the bank to Ames on April 8, 1920, and $5,429.23 on May 12, 1921. They admitted that plaintiff had performed all things required by the contract to be done up to March 15, 1920. As an affirmative defense, it was alleged that the plaintiff had waived the delivery of the evidence of merchantable title by September 15, 1920, had accepted a deed to the lands, executed in March and recorded in April, 1920, and had accepted abstracts of title and also the title to the lands in April, 1921.

The plaintiff's reply denied that any waiver had been made or that he had accepted the abstracts or title. The case was tried to a jury upon these pleadings and the evidence submitted by plaintiff and defendants, and a verdict was returned for the plaintiff against the bank, Senter, and Hood. The trial proceeded upon the theory that the complaint stated a cause of action in the nature of trover for conversion of the money paid by the plaintiff and was submitted to the jury by instructions based upon that theory. The court instructed the jury that the action was not an action upon the contract,

but was an action for the conversion of money. It appeared, from the evidence, that the plaintiff had paid the payments November 4, November 17, and March 15, by checks drawn against a bank in Nebraska, and payable to the Parker State Bank. The evidence does not show any directions given to the bank by the plaintiff to hold these checks or the money derived from them in any special manner. The bank carried the account on its books in a special account, which it called the "Miscellaneous Account," until it was paid to Ames. Mr. Senter and Mr. Hood acted as the bank's officers in making this payment by the bank to Mr. Ames. It is because of these acts in making the payments to Mr. Ames that the jury found them jointly liable with the bank to the plaintiff, upon the theory submitted by the instructions of the court, that they thereby aided in the conversion of the money.

1. Assignments of error present the question whether the defendants' motions in arrest of judgment were properly overruled. The motions challenged the sufficiency of the complaint and of the pleadings to sustain the judgment. In support of this contention it is claimed that the complaint attempted to state a cause of action for the conversion of the money paid by the plaintiff to the bank, and that such an action cannot be maintained, unless the specific money, the identical coin, bills, or checks deposited by the plaintiff, were to be held and returned to the depositor. The contract did not provide for the holding by the bank of the identical money or checks paid to it by the plaintiff. It provided that the "payments" were to be made to the bank, "to be held by them in escrow" until an event should have occurred. The complaint avers that the plaintiff delivered the "sums of money" required to be paid by the contract, but does not allege that the very thing delivered was to be returned. It is not claimed by the defendant in error that the obligation of the contract, or the charge made in the complaint, required the bank to hold the particular things received and to return them to the plaintiff, nor could such a construction be maintained. When the nature of the business conducted by banks is considered, and the usual mode in which they receive and care for money, checks, or drafts received, it is obvious, that in the absence of instructions, money received will ordinarily be mingled with the other money in the bank, and that checks and drafts will be presented for payment, and the money so received will also be placed with the other money in the bank. The fact that separate

accounts are kept of the funds received for special purposes does not show a duty of a bank to keep in distinct parcels the identical money or checks received for such special purposes. It is also obvious that the bank should not ordinarily keep the original checks or drafts, drawn on other banks, without presentment for payment, when the fund may continue in the bank for a long period before it is to be delivered, unless instructions are given to do so by the depositor.

[1, 2] The money deposited with the bank was not a special deposit, as such a deposit consists in the placing of specific kinds of money or property in the possession of the bank, with an obligation of the bank to return the identical thing deposited; the depositor retaining title. Marine Bank v. Fulton Bank, 2 Wall. 252, 256, 17 L. Ed. 785; Scammon v. Kimball, Assignee, 92 U. S. 362, 369, 23 L. Ed. 483; In re Mutual Building Fund Soc., 2 Hughes. 374, 377, Fed. Cas. No. 9,976; Morse on Banking, §§ 183, 190, 205; Magee on Banking, pp. 276, 282; Michie on Banks and Banking, pp. 1286, 1297. The plaintiff, therefore, was not entitled to maintain an action for conversion, because an action of that nature does not lie for the conversion of money, unless there was an obligation to return the specific or identical money entrusted to the care of the bank. Orton v. Butler, 5 Barn. & Ald. 652, 653, 7 Eng. Com. Law Rep. 356, 357; Hartford v. Smith, 199 F. 763, 765, 118 C. C. A. 201; Shoemaker v. Hinze, 53 Wis. 116, 117, 10 N. W. 86; Larson v. Dawson, 24 R. I. 317, 318, 53 A. 93, 96 Am. St. Rep. 716; Shrimpton & Sons v. Culver, 109 Mich. 577, 580, 67 N. W. 907; Salem Light & Traction Co. v. Anson, 41 Or. 562, 567, 67 P. 1015, 69 P. 675; Hazelton v. Locke, 104 Me. 164, 168, 71 A. 661, 20 L. R. A. (N. S.) 35, 15 Ann. Cas. 1009; 38 Cyc. 2014. In the case of Orton v. Butler, above cited, the court said, by Abbott, Chief Justice:

"The present count states that the defendant had and received to the use of the plaintiff, a certain sum of money, to wit, ten shillings, to be paid to the plaintiff, but which the defendant converted to his own use. It is contended that this is a count in trover. Now, the action of trover is only maintainable for specific property; it will lie for so many pieces of gold or silver, and in that case a defendant can only redeem himself by tendering to the plaintiff the same specific pieces. But in this case he clearly might do so, by returning an equal sum of money. There is, therefore, not merely a want of certainty in the count, but it states

that which is not the subject of an action of trover at all."

[3] The allegations of the complaint show a deposit of sums of money made with the Parker State Bank, under the terms of a contract made between the plaintiff and Mr. Ames, by which the payments were to be held by the bank until a deed had been delivered to the plaintiff and an abstract furnished him showing a merchantable title. The answer of the bank admits the receiving of this money under the terms and conditions imposed by this contract, and a failure to pay the money to the plaintiff. The allegations in the complaint, with the allegations that the deed and title contracted for had not been furnished, charged the Parker State Bank with a contractual obligation to return to the plaintiff the money which had been deposited for a special purpose and constituted the bank a trustee of an express trust for the benefit of the plaintiff. Libby v. Hopkins, 104 U. S. 303, 308, 26 L. Ed. 769; Montagu v. Pacific Bank (C. C.) 81 F. 602, 608; Moreland v. Brown, 86 F. 257, 260, 30 C. C. A. 23; Continental & C. T. & S. Bank v. Chicago T. & T. Co., 199 F. 704, 709, 118 C. C. A. 142; Massey v. Fisher (C. C.) 62 F. 958, 959; First Nat. Bank v. Armstrong (C. C.) 36 F. 59, 61; Woodhouse v. Crandall, 197 Ill. 104, 109, 64 N. E. 292, 58 L. R. A. 385; Kimmel v. Dickson, 5 S. D. 221, 224, 58 N. W. 561, 25 L. R. A. 309, 49 Am. St. Rep. 869; Peak v. Ellicott, 30 Kan. 156, 161, 1 P. 499, 46 Am. Rep. 90; People v. City Bank of Rochester, 96 N. Y. 32, 36, 37; Whitcomb v. Carpenter, 134 Iowa, 227, 229, 111 N. W. 825, 10 L. R. A. (N. S.) 928; Farley v. Turner, 26 L. J. Ch. 710, 711.

[4] As the bank was a trustee, if the allegations of the complaint be true, the cestui que trust had the right to elect to proceed against the trustee personally for any breach of the trust by misappropriation of the fund. Oliver v. Piatt, 3 How. 333, 401, 11 L. Ed. 622; 3 Pom. Eq. Jur. § 1080; 2 Perry on Trusts (6th Ed.) § 843; 39 Cyc. 533. The plaintiff had the right to sue in equity for an accounting or to bring a suit at law in the nature of assumpsit for money had and received by the bank.

[5] "Every person who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued either at law, for money had and received, or in equity, as a trustee, for a breach of trust." Taylor v. Benham, 5 How. 233, 274, 12 L. Ed. 130; In re Interborough Consol. Corporation (C. C. A.) 288 F. 334, 347, 32 A. L. R. 932; Or-

ton v. Butler, 5 Barn. & Ald. 652, 653; Shoe-maker v. Hinze, 53 Wis. 116, 117, 10 N. W. 86; Hazelton v. Locke, 104 Me. 164, 168, 71 A. 661, 20 L. R. A. (N. S.) 35, 15 Ann. Cas. 1009.

[6] It is claimed that this complaint cannot be regarded as stating an action in contract, as for money had and received, because the plaintiff manifested his purpose to sue ex delicto, by reasons of the allegations of conversion, of fraudulent conduct, and by asking for an execution against the body of the personal defendants. The nature of the cause of action depends upon the facts pleaded in the complaint as a whole, and if it alleges an action upon a contract, the plaintiff is entitled to recover thereon, although the plaintiff alleges a conversion and remedies ex delicto are asked. Klepner v. O. J. Lewis Mercantile Co., 159 F. 94, 95, 86 C. C. A. 284; Conaughty v. Nichols, 42 N. Y. 83, 88; Austin v. Rawdon, 44 N. Y. 63, 70; Van Oss v. Synon, 85 Wis. 661, 665, 56 N. W. 190; Logan v. Freerks, 14 N. D. 127, 135, 103 N. W. 426; Allsopp v. Joshua Hendy Mach. Works, 5 Cal. App. 228, 231, 90 P. 39.

[7] The conclusion is that the plaintiff stated a cause of action against the Parker State Bank, as a trustee of an express trust for money had and received, but did not state any cause of action against the bank in conversion. Nor did it state a cause of action against the defendants Senter and Hood, as no obligation of trusteeship on the part of either of them was shown. The motion in arrest of judgment should have been sustained as to the defendants Senter and Hood but was properly overruled as to the bank.

[8] 2. The court instructed the jury on the theory that the bank was bound to hold all of the payments that had been made to it, amounting to $16,183, subject to the terms of the agreement between Ames and the plaintiff relating to the furnishing of a deed and an abstract of title. The defendants excepted to this portion of the instructions, claiming that the only payments which the bank was required to keep, were the payments made by the plaintiff upon the note of $6,750, due on or before April 1, 1920. There can be no doubt that the contract authorized the plaintiff to pay the bank the sum of $6,750 which was due on or before March 15, 1920, and required the bank to keep that sum, when it was accepted, to be held until a proper deed and abstract had been furnished, or until it was excused from further custody of that fund, for it provided that if Ames was unable to deliver a merchantable

title "on the payment" of the first three amounts required, and on the delivery of the notes and deeds of trust, the payments were to be made to the bank, and the notes and deed of trust were to be delivered to the bank to be held by the bank on the terms mentioned. The contract does not state that the first two payments of $2,000 each were to be made to the bank. It recites that $2,000 has been "in hand paid, receipt of which is hereby acknowledged" and requires $2,000 to be paid by November 18th. The ordinary meaning of these provisions of this contract, signed by the vendor and vendee, is that the first two payments were made and to be made to the vendor. Payments to the bank as a trustee were authorized only in the event that Ames was unable to deliver a proper deed and abstract when $4,000 of the purchase price had been paid to Ames and the vendee was ready to pay the third payment of $6,750 and to deliver the notes and deed of trust. This view is strengthened by other provisions of the contract to the effect that, if the $2,000 payment of November 18th and the $6,750 payment of March 15th were not made, and the notes and deed of trust were not delivered, the payments "already made" were to be forfeited and held by Ames as liquidated damages; but, if the plaintiff made the first three payments and delivered the notes and deed of trust, Ames was bound to repay to the plaintiff the amounts "already paid" and an additional sum as liquidated damages, if Ames refused to deliver a good deed "on the payment" of these three sums. Reading the several provisions of the contract together, it is apparent that the bank was not obligated to the plaintiff as a trustee of the first two payments made by him, and those payments were made by him to the bank as the agent of Ames. The evidence does not show any circumstances at variance with this construction of the contract, and the instruction of the court must be held to be erroneous in allowing a recovery by the plaintiff of the $2,000 paid at the time of the execution of the contract and of the $2,000 paid on November 19, 1919.

3. The defendants claimed that the plaintiff had accepted delivery of a deed for the land from Ames, had waived the delivery of an abstract showing a merchantable title by September 15, 1920, and had accepted the abstracts and the title in April, 1921. There was a large amount of evidence offered on these issues. It was shown that the plaintiff had contracted in June, 1920, to sell the land to one Kelly. The plaintiff took possession

of the land and delivered possession to Kelly and such possession continued for about three years. The plaintiff made some statements in which he claimed ownership of the land. A suit was brought in the state court, wherein the plaintiff obtained a decree quieting his title to a portion of this land. The testimony was conflicting as to whether the deed from Ames to the plaintiff, which was present at a conversation between Senter and the plaintiff, was actually delivered to plaintiff and returned by him to Senter with directions that it be recorded. The plaintiff testified that he had made a demand in October, 1920, of the bank for a return of the money he had paid. The testimony on behalf of the defendants denied that such a demand had been made. The defendants offered in evidence an affidavit made by the plaintiff in December, 1920, entitled in the suit to quiet title, showing that the plaintiff was seeking to quiet his title to a part of this land. The defendants also offered in evidence an application for insurance on the buildings on a part of this land, with testimony that the plaintiff had signed it about May 11, 1920. It contained a statement that the plaintiff had a warranty deed to the land.

[9] A letter was offered by the defendants, written by the plaintiff to Senter dated February 7, 1921, in which he refers to a letter that Senter had written to Kelly about the insurance on the buildings on this land, and about a claim that the plaintiff had not paid the insurance premium. In this letter the plaintiff claimed that he had never received the letter from Senter, and stated his belief that his attorney had remitted the insurance premium to Senter. The defendants also offered a quitclaim deed made by the plaintiff to one Clarke for all of this land, and dated January 3, 1923. They also offered an answer in a suit wherein Kelly had sued the plaintiff as a defendant. This answer was verified by the plaintiff in April, 1923, and contained statements that the plaintiff had placed Kelly in possession of this land in June, 1920, and that he had permitted Kelly to remain in possession for three crop years and claimed that the reasonable value of this use was $4,000 per year and asked for a judgment for that amount because of such possession by Kelly. Objections were sustained to these offers of evidence on the grounds of immateriality and exceptions were saved. The writings should have been received in evidence. They tend to show conduct of the plaintiff at variance with his claims that the deed was not delivered to him,

that he had demanded the return of the money he had paid the bank, and that he had not accepted the title to the land. The inference to be drawn from these statements, which were inconsistent with the claims made by the plaintiff in his pleadings and in his testimony, was a proper subject for the consideration of the jury, on the questions of a trust relationship between the plaintiff and the bank, and the claim of an injury to plaintiff by reason of a misappropriation of the money by the bank.

[10] 4. The plaintiff consulted with an attorney at North Platte, Nebraska, at various times during his dealings with this land and with the defendants. There were some business relations between the plaintiff and the attorney, partly growing out of transactions relating to this land. A number of letters from this attorney to the defendants, to Kelly and to the plaintiff's attorneys were offered in evidence by the defendants, on the theory that the statements made therein were admissions made by or on behalf of the plaintiff, by his authorized agent. The evidence does not show a sufficient foundation of authority for the attorney to speak for the plaintiff on these matters. It does not appear whether the attorney was writing on behalf of himself or another or that the plaintiff authorized or ratified the sending of the letters. There was no error in the exclusion of these letters.

There are other assignments of errors, but they relate to rulings made as to which no proper exceptions were saved, or to matters which will probably not arise again upon a new trial. The judgment will be reversed and a new trial awarded.