**FULTON, Etc, et v MAHONING VALLEY COUNCIL BOY SCOUTS OF AMERICA**

Ohio Appeals, 7th Dist, Mahoning Co

Decided Oct 27, 1933

John W. Bricker, Attorney General, Columbus, and L. M. Cailor, Youngstown, for plaintics in error.

Earl D. Haefner, Youngstown, for defendant in error.

## OPINION

By ROBERTS, J.

It thus appears that it was not the intention of McKenzie, who testified in the case, to deposit this money with the bank of which he was cashier, but he kept it personally in his own possession, and acting with supposed authority the young lady put it in the bank and gave a check. Now, under those conditions, what was the relation existing between the bank and the claimant, the Boy Scouts, that of simply debtor and creditor, or was it a trust relationship such as it would be entitled to a preference. Reference will be made to a few authorities upon this subject.

Turning first to the case of **Smith** et,

Trustee v Fuller et, 86 Oh St, 57, paragraph 4 of the syllabus reads as follows:

"Where a trustee deposits trust money in a bank, taking as evidence thereof a certificate of deposit certifying that he as trustee has deposited the fund payable to self on return of the certificate properly endorsed, the same not being subject to check, and no stipulation for interest made, a presumption will be indulged, in the absence of proof to the contrary, that the trustee intended to perform and not violate his duty, and that the deposit was intended as a special, and not a general deposit.

Paragraph 5 of the syllabus reads:
"Where, in such case, the bank fails and makes an assignment for the benefit of creditors before such fund is withdrawn, and it appears that the bank, upon receiving such deposit, had mingled the trust money with its own funds, money paid out from such fund for its own purposes will be presumed to have been paid from its own money, and not from the trust fund. And if it be shown that at all times from the making of the deposit to the time of the assignment by the bank, there was in its vaults money of amount and value equal to the amount so deposited, a court of equity may engraft a trust upon such money, and the trustee will become a preferred creditor to the amount of such deposit."

Reading from page 67, in the opinion:
"It is not the identical dollar that may be pursued any more than it is the identical grains of wheat put in a warehouse or elevator that the depositor may follow, but equivalent dollars, and the rule now is, as held in Board of Commissioners v Strawn, 157 Fed. Rep., 49, opinion by Burton, J. that where a bank has mingled trust money with its own funds, money paid out from such fund for its own purposes will be presumed to have been paid from its own money and not from the trust fund in a situation where, as in this case, the mingled fund has not been reduced at any time below the amount of the trust fund. The presumption above referred to rests upon the idea that the drawings out from time to time were moneys which the bank had a right to expend in its own business, and that the balance which remained included the trust fund which the bank had no right to so use. To have used it would have been a violation of the trust, and that will not be presumed in the absence of evidence to that effect." The same conclusion is ex-

pressed in Massey v Fisher, Receiver, 62 Fed. Rep., 958, thus: 'The fact that the money was not marked, and by a mingling with other funds of the bank, lost its identity, does not affect the right to recover in full, if it can be traced to the vaults of the bank, and it appears that a sum equivalent to it remained continuously within those vaults until removed by the receiver.' See also, Elizalde v Elizalde, 137 Cal., 634. Numerous other cases to like effect cited by counsel will be found in the reporter's notes, and we regard the principle as not only consonant within reason and fair dealing but as abundantly supported by authority."

That is perhaps the ruling case in Ohio upon that subject. Another frequently cited case which is interesting upon this question, and time will not be taken to read therefrom, is Orma and Okey v Baker, 74 Oh St, 337.
In the case of Jones et v Kilbrath, 49 Oh St, commencing on page 401, in the second and third paragraphs of the syllabus it is said:

"The banking company, could not, by crediting, on the day of its failure, the owner with the amount of the draft before its maturity and collection, place him in the position of a general creditor of the company, entitled to receive only dividends out of its assets in the hands of the trustee.
The relation between the owner of the draft and the banking company with which it was lodged for collection, was that of principal and agent; and a trust character was impressed upon the draft and its proceeds, which forbade their application, with the company's or trustee's acquiescence, as a credit in payment of a debt of the company."

Klaustermeyer v Cleveland Trust Company, Assignee, 89 Oh St, 142, is an interesting case of kindred nature, in which equitable rules of interest in this case are stated. Ellerbe et v Studebaker Corporation of America, reported in 21 Fed., 2nd Series, 993, is a recent case by the Circuit Court of Appeals, in which the syllabus reads, in part:

"Owner of draft sent bank for collection and prompt remittance, there being nothing in contract between parties authorizing collecting bank to appropriate proceeds of collection and make itself mere debtor, or to send its check in settlement, when its check was not paid, was entitled to pro-

ceeds of collection, if they could be traced into funds which came into hands of receiver.

Where bank to which drawer forwarded draft for collection was insolvent at time it made collection, proceeds of collection were held in trust for drawer, and could be collected from receiver after they had come into his possession, since insolvency of collecting bank terminates its authority to proceed further.

Owner of draft collected by insolvent bank is not entitled to have trusts declared on assets in hands of its receiver, or to preferential payment therefrom, unless he is able to trace proceeds of collection into hands of receiver, or to show that assets which have come into his hands have been directly augmented as a result thereof."

This is a case in which the opinion is of considerable length and the subject under discussion voluminously discussed.

Attention is now directed to Volume 82 A.L.R., in which there is a very elaborate brief under the title of "Insolvent Bank; Following Trust Fund," of several hundred pages, and commencing on page 265 the decisions of Ohio upon this subject are annotated and discussed, and this report will be found to be of considerable interest to any person curious to be advised as to the law in this respect. Several other cases may be quoted from as follows:

"A depositor, making a deposit for the specific and stated purpose of meeting checks which he has just issued, binds the bank by the special conditions imposed, and does not make the bank merely the debtor of the depositor."

Dolph v Cross, 153 Iowa, 289.

"A fund which comes into the possession of a bank, with respect to which the bank has a single duty to perform, which is to deliver it to the person entitled thereto, is a trust fund incapable of being co-mingled with general assets of the bank substantially transferred to a receiver."

49 Nebr., 786; 69 NW, 115.

Several other cases of like import have been cited by counsel for the defendant in error in brief with which counsel in the case are undoubtedly familiar.

Perhaps these citations or quotations from authorities were not really necessary, because the contention of the plaintiffs in error is based upon the proposition that a relation of debtor and creditor existed, of bank and depositor, and perhaps counsel if otherwise it were assumed that it was a special deposit and a trust relationship existed, would not question the law as now suggested. There was a rule prevailing at one time which recognized the necessity of tracing the specific coin or currency, or whatever it may have been, in order to have a lien thereon or preference for its recovery, but as read from the authorities that is not now the law.

The evidence shows that there were several thousand dollars in the bank at the time it was closed, some three days subsequent to this money being deposited in the bank by the young lady; that while the evidence is not very explicit, as suggested, upon such proposition, it appears to be reasonably certain that the lowest ebb of the bank in the amount of funds on hand existed at the time it closed its doors, and the presumption, as has been stated, is indulged in that the bank if it wrongfully took this money and deposited it and undertook to develop the relation of debtor and creditor, is presumed to have paid its own money, that which it might rightfully use, and that whatever funds remained in the bank at the time it closed were the original funds of the person whose money was wrongfully appropriated.

Now, in conclusion it does not appear that there ever was the relation of debtor and creditor, such as is claimed, with the bank. This money was raised by the local council of Boy Scouts in the village of Sebring for a specific purpose and was needed for practically immediate use. This local council was importuned to make prompt remittance to the Valley Council at Youngstown. Evidently appreciating that condition, the treasurer, who was also cashier of the bank, presumably thought it wasn't worth while to put this fund in the bank as a deposit. Perhaps he thought more of the account of the trust fund than he did of the bank and knew more about the bank than anyone else, and therefore preferred to keep his cash in the drawer rather than deposit it in the bank. Whatever his purpose may have been, he did not deposit it, and when a representative of the Mahoning Council came for the money, the young lady, perhaps not being acquainted with this man, and perhaps thinking it safer to give a check instead of the money, as a single transaction and simply for the purpose of making this payment by the local treasurer to the district treasurer, put the money in the bank and immediately drew a check on it for the precise amount. Now, that

322

money only went into the bank for the purpose and convenience of making this remittance. So far as the evidence shows no one had any intention of carrying on a bank account there, so there never was anything, in the opinion of this court, so far as the evidence shows, to indicate other than a relation of agency. There was no intention to make a deposit in this bank, and such being the fact, the relation of depositor and bank, debtor and creditor, never came into existence. That is, this court holds as was held by the Court of Common Pleas, as indicated at least by the decided weight of the evidence. Therefore the judgment of the Court of Common Pleas is affirmed.

There was some request made in brief that if the court held against the bank that it indicate in some way the order of priority as preference. We do not know how to do that; we don't know how we can. It simply comes up on error, and we hold there is no error in the Court of Common Pleas, and that presumably ends our jurisdiction in the matter. However, if it were possible to indicate preference, counsel suggests that claims are being presented for preferred claims which would exceed the amount of cash in the bank at the time it closed, but if that is the fact those parties are not in this case. We are not authorized to determine those matters, so that we do not see that it is anything that we have anything to do with.

Judgment affirmed.

FARR and POLLOCK, JJ, concur in the judgment.