ROBERT L. LEACH, State Superintendent of Banking, Appellant, v. BATTLE CREEK SAVINGS BANK; H. L. ALEXANDER, Intervener, Appellees.

**BANKS AND BANKING:** Insolvency—Preference—Agency to Collect—Termination of Relation. The act of the holder of a promissory note in forwarding it to a bank for collection from the maker (not the bank) creates the trust relation of principal and agent, but such relation is *ipso facto* terminated and the relation of debtor and creditor substituted by the act of the bank in issuing and forwarding to said holder its draft for the proceeds of said collection *strictly in accordance with the holder's direction.*

Headnote 1:   7 C. J. pp. 598, 605.

Headnote 1:   3 R. C. L. 633, 634.

*Appeal from Ida District Court.*—R. L. McCORD, Judge.

DECEMBER 14, 1926.

The claim of H. L. Alexander, intervener, was allowed by the court as a preferred claim against the receiver of the Battle Creek Savings Bank, and the receiver appeals.—*Reversed and remanded.*

*Ben J. Gibson*, Attorney-general, and *Campbell & Campbell*, for appellant.

*Charles S. Macomber,* for appellee.

STEVENS, J.—The controversy in this case grows out of the insolvency of the Battle Creek Savings Bank, of Battle Creek, Iowa, and involves the right of H. L. Alexander, intervener and appellee, to have his claim, filed with the receiver, established as a preferred claim. The material facts, which are conceded, are as follows: On February 21, 1924, the appellee, who resides at Concord, New Hampshire, forwarded to the cashier of the Battle Creek Savings Bank a note for the sum of $2,500, signed by Louis Derr and wife, for collection. The letter of transmittal follows:

"J. W. Wellner, Cashier, Battle Creek Savings Bank, Battle Creek, Iowa.

"Dear Sir: I am in receipt of your favor of January 20 enclosing check for $75.00 in payment of Louis Derr interest due Feb. 1. I am enclosing to you herewith the following papers in this loan, which papers I would have forwarded you before but I have only just received the Satisfaction signed by my sister:

"Note No. 1660 for $2,500 due Feb. 1, 1924; Assignment of mortgage from A. C. Johnston to Leodore E. Alexander; Assignment from Leodore E. Alexander to Mary E. Alexander; Mortgage from Louis Derr and Lena Derr to A. C. Johnston; Satisfaction signed by my sister, Mary E. Alexander.

"Of the proceeds $2,500.00, you may deposit $1,000 in the name of my sister, Mary E. Alexander, forwarding me pass book for this amount, in her name, together with draft to her order for the balance."

The note, which apparently did not include interest, was paid in full to the bank on the 16th day of February. Pursuant to appellee's directions, the bank opened an account with Mary E. Alexander for $1,000, issued a pass book to her, and also drew its draft on the First National Bank of Chicago, payable to appellee, for $1,500, and promptly forwarded the pass book and draft to appellee, who, on February 18th, acknowledged receipt thereof, as follows:

"Mr. J. W. Wellner, Cashier Battle Creek Savings Bank, Battle Creek, Iowa.

"Dear Sir: I wish to thank you for your letter of February 15, enclosing Chicago exchange for $1,500 together with book showing $1,000 to the credit of Mary E. Alexander, in payment of Louis Derr's loan which matured February 1."

Before the draft could be presented at the bank in Chicago in due course, and on February 20th, the Battle Creek Savings Bank became insolvent, and closed its doors.

That the acceptance of the note for collection by the bank created the relation of principal and agent between it and appellee is not only obvious, but well settled by the decisions of this and other courts. *Page County v. Rose,* 130 Iowa 296; *Messenger v. Carroll Tr. & Sav. Bank,* 193 Iowa 608; *Brown v. Sheldon St. Bank,* 139 Iowa 83. The proceeds of the note, when received by the bank from the debtor, became a trust fund in its possession. The only question, therefore, to be determined is: Was the relation of principal and agent terminated by the issuance and transmittal of the draft for $1,500 to appellee and the credit upon the books of the bank in favor of Mary E. Alexander, and that of creditor and debtor substituted? If the relation of principal and agent continued until appellee was actually paid, then the preference allowed in favor of appellee's claim by the court below must be sustained, if it passed to the receiver in augmentation of the bank's funds; otherwise, the order must be set aside and reversed. This is the decisive test to be applied in such cases, in determining whether a preference should or should not be allowed. *Commercial Bank of Pa. v. Armstrong,* 148 U. S. 50 (37 L. Ed. 363); *Lippitt v. Thames L. & Tr. Co.,* 88 Conn. 185 (90 Atl. 369). There can be no question as to the $1,000 credited to the account of Mary E. Alexander, and her claim is not here involved. It will be observed that the remittance was in the exact form requested by appellee. The request that the draft of the bank for $1,500 be forwarded to him was based, of course, upon the anticipated payment by the debtor to the bank of the note. Appellee must also have known that, upon the issuance of the draft, the proceeds of the collection would be at once mingled with the general assets of the bank and lose its identity. The loss of identity is not, however, in any respect vital to the right to a preference. It is, however, significant, in the deter-

mination of the subsequent relation between the parties. One
who purchases a draft from a bank, paying therefor in cur-
rency, purchases the credit of the bank, and no trust relation
arises. The direction to the bank to remit the balance of the
proceeds of the collection above $1,000 by its own draft was the
equivalent of the deposit of currency for the purchase of the
draft at the bank's counter for that amount. The question is
largely one of intention. The bank used the proceeds of the
collection in payment of the draft which it drew upon its own
credit at the Chicago bank. That appellee intended to exchange
the funds held by its agent for the draft is hardly open to con-
troversy. Both parties intended the draft to operate as a substi-
tute for currency. Under such circumstances, the fund in the
hands of the bank lost its character as a trust fund, and the
relation between the parties at once became that of creditor and
debtor. *Danbury St. Bank v. Leach,* 201 Iowa 321; *Leach v.
Iowa St. Sav. Bank,* 202 Iowa 95; *Leach v. Citizens St. Bank
(Federal Reserve Bank of Chicago, Intervener),* 203 Iowa——;
*Holder v. Western German Bank,* 136 Fed. 90; *Chetopa St. Bank
v. Farmers & Merch. St. Bank,* 114 Kan. 463 (218 Pac. 1000);
*First Nat. Bank v. Hoover,* 114 Kan. 394 (218 Pac. 1003); *Clark
v. Toronto Bank,* 72 Kan. 1 (82 Pac. 582); *Lippitt v. Thames
L. & Tr. Co.,* supra; *Commercial Bank of Pa. v. Armstrong,*
supra; *Hecker-Jones-Jewell Mill. Co. v. Cosmopolitan Tr. Co.,*
242 Mass. 181 (136 N. E. 333); *Union Nat. Bank v. Citizens
Bank,* 153 Ind. 44 (54 N. E. 97); *Legniti v. Mechanics & Metals
Nat. Bank,* 230 N. Y. 415 (130 N. E. 597); *Beecher v. Cosmo-
politan Tr. Co.,* 239 Mass. 48 (131 N. E. 338); *American Exp.
Co. v. Cosmopolitan Tr. Co.,* 239 Mass. 249 (132 N. E. 26).

Apparently, *Goodyear Tire & Rubber Co. v. Hanover St.
Bank,* 109 Kan. 772 (204 Pac. 992), is in conflict with the hold-
ing of the Kansas Supreme Court in *Chetopa St. Bank v. Farm-
ers & Merch. Bank,* cited supra. The latter case, however,
points out a distinction therein, based upon the concession of
counsel in the earlier case. The contrary doctrine is fully dis-
cussed in *State Nat. Bank v. First Nat. Bank,* 124 Ark. 531 (187
S. W. 673), and *Federal Reserve Bank v. Peters,* 139 Va. 45 (123
S. E. 379).

Appellee relies principally upon *Page County v. Rose,* 130
Iowa 296, and *Messenger v. Carroll Tr. & Sav. Bank,* 193 Iowa

608.   What we have already said sufficiently, perhaps, distinguishes the doctrine of those cases from the case before us. But, to be sure, we add the following: When a claim is sent to a bank for collection, it is implied that the bank, which becomes the agent of the forwarder, will accept cash only in payment thereof. When payment is made, the bank holds the money as the agent of the forwarder, and in trust for him.   The funds dealt with in the *Rose* and *Messenger* cases, although the cases were wholly dissimilar in their facts, were in the custody of trustees.   As the agent could receive cash only in payment of the item received for collection, remittance must be made in cash or its equivalent, unless the principal, directly or impliedly, agreed to accept a draft or some other medium of payment in lieu thereof.   The direction of the forwarder in the *Messenger* case was to collect a sight draft and remit.   Nothing whatever was said as to the kind or form of remittance.   It was, therefore, the duty of the bank to remit cash or its equivalent.   Since it did not do so, the cash collected was retained in trust by the agent for the benefit of the principal.

In the present case, there was a specific direction to remit by the draft of the agent, which was complied with.

The conclusion here reached disposes of the appeal, and it is unnecessary to discuss the question of the augmentation of the bank's funds.   The order awarding preference to appellee's claim is set aside, and the cause reversed for order and judgment in harmony herewith.—*Reversed and remanded.*

All the justices concur.