## STONE v. WACHOVIA BANK & TRUST COMPANY

### (143 S. E., 27)

1. Banks and Banking—Generally, Forwarding Bank May Accept Only Legal Tender from Collecting Agency.—General rule is that forwarding bank, in absence of special agreement, is authorized to accept only legal tender from its collecting agency.

2. Banks and Banking—Collecting Bank Forwarding Check Directly to Drawee, Which Credited Collecting Bank's Account Under Agreement, Held Liable to Its Principal for Amount Thereof, Notwithstanding Agreement with Principal Regarding Accepting Either Cash or Drafts.—Where collecting bank forwarded check directly to drawee bank, which by agreement was authorized to credit collecting bank and remit at stated periods, and drawee bank debited check to drawer and credited it to collecting bank, latter bank was liable to its principal for amount thereof, notwithstanding agreement with principal that bank might accept either cash or draft in payment of such items, and would not be liable for failure to collect drafts so received, since it did not accept either cash or draft.

3. Assignments—Drawer of Check Could Purchase Payee's Claim Acquired by Assignment from His Bank Against Collecting Bank Not Performing Duty and Recover Thereon.—Drawer of check could purchase, by assignment from payee, claim, which he held by assignment from his bank, against collecting bank failing to perform duty resulting in drawee bank's closing before remitting to collecting bank, and drawer was entitled to any relief which assignor may have had against collecting bank.

Before Bonham, J., Anderson, March, 1927.   Reversed and remanded, with direction.

Action as for money had and received by Claude L. Stone against the Wachovia Bank & Trust Company.   From a judgment dismissing the complaint, plaintiff appeals.

*Messrs. Watkins & Price,* for appellant, cite: *Liquidation of bank by directors under control of State Banking Examiner not inconsistent with solvency of bank:* Sec. 3981,

Note: As to liability of bank accepting check as payment of debts held by bank for collection, see annotation in 18 A. L. R., 537; 3 R. C. L., 616; 1 R. C. L. Supp., 864; 4 R. C. L. Supp., 208; 5 R. C. L. Supp., 189; 6 R. C. L. Supp., 152; 7 R. C. L. Supp., 99.

Code; 133 S. E., 446; 142 S. C., 231. *Principal and agent:* 139 S. E., 783. *Collection completed:* Ann. Cas., 1912-B, 155; 69 S. E., 1012. *Liability of defendant to remit:* 135 S. C., 347. *Debtor and creditor:* 134 S. E., 510; 114 N. C., 34; 41 A. S. R., 795. *Check payable only in money:* Morse, Bks. & Bkg. (2nd Ed.), 268. *Statute changing this principle strictly construed:* 68 L. Ed., 617.

*Messrs. Allen & Doyle,* and *Manly, Hendren & Womble,* for respondent, cite: *"Insolvent":* 81 S. C., 244. *Submission to the jurisdiction of South Carolina Court not evidence of ownership of account attached:* 76 S. C., 349. *No liability attaches to defendant:* Storey Agency, Sec. 236; 128 S. C., 344; 69 S. E., 10; 90 S. E., 302. *"Action for money had and received":* 5 C. J., 1388. *Where there remains something to be done under a contract other than the payment of money, action will not lie:* 4 C. J., 52. *Plaintiff's relation to facts of case:* 133 S. E., 910; 266 U. S., 389.

May 1, 1928.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an action for $1,099.74, as for money had and received, instituted in the Court of Common Pleas of Anderson County on September 28, 1926, by attachment. The case was tried by his Honor, Judge Bonham, upon an agreed statement of facts.

On March 2, 1927, Judge Bonham filed an order dismissing the complaint from which the plaintiff has appealed.

The statement of facts is substantially as follows:

On October 20, 1925, the plaintiff, Stone, transmitted to C. C. Coddington, Inc., at Charlotte, N. C., his personal check upon the Bank of Anderson for $1,099.74, in settlement we assume of a debt due by him to Coddington. On October 22d, Coddington deposited the check in the Union National Bank of Charlotte (hereinafter referred to as the Charlotte Bank), upon an unrestricted indorsement, and

received credit therefor upon his deposit account, entered in his passbook.

Apparently upon the same day the Charlotte Bank forwarded the check, for collection, to the defendant Wachovia Bank & Trust Company, at Winston-Salem, N. C. (hereinafter referred to as the Winston Bank), for collection and remittance.

The check appears to have been indorsed by the Winston Bank "to any bank or banker" on October 23d. Exactly when it was forwarded to the Bank of Anderson does not appear. The Circuit Judge found as a fact that it was *received* by the Bank of Anderson on *October 26th,* for collection, which must be accepted as a fact.

Prior to that date, on October 24th, the Winston Bank had accumulated credit with the Bank of Anderson, *which did not include the Stone item,* of $4,270.63, and on that day the Bank of Anderson remitted to the Winston Bank its check for $4,200 on a Richmond bank, in compliance with the custom of business dealing between the Winston Bank and the Bank of Anderson, which had prevailed for many years, that the Winston Bank would forward to the Bank of Anderson checks received by it upon the latter, for "collection and remittance in Northern exchange"; upon presentation and payment of such checks, the amounts would be credited to the Winston Bank upon the books of the Bank of Anderson; on Wednesdays and Saturdays, the accumulated credits to date, in even hundred (the balances less than $100 being retained), would be remitted in Richmond or Northern exchange.

On October 26th, the Bank of Anderson received the check for collection, stamped the check "paid," charged the amount of it to the deposit account of the plaintiff, Stone, drawer, and at the same time credited the account of the Winston Bank with the same amount.

On that same day, October 26th, at the close of business the Bank of Anderson breathed its last, and did not reopen

on the 27th, having on that day (or possibly the preceding) passed into the hands of the official mortician, the state bank examiner, who retained possession and control until the order hereinafter referred to was made, directing liquidation. At the close of business on October 26th, the Bank of Anderson had on hand $18,000 in cash and currency.

The $4,200 check on the Richmond Bank, which the Bank of Anderson had remitted to the Winston Bank, was presented to the Richmond Bank after the Bank of Anderson had closed its doors, and was returned unpaid to the Winston Bank, protested for nonpayment on October 28th. *Emphasis is directed to the fact that this check did not include the Stone item.*

On January 1, 1926, Coddington paid to the Charlotte Bank, upon demand, the amount of the Stone item, $1,099.74, and took an assignment from the Charlotte Bank of all rights which it had against the Winston Bank, incident to the transactions.

On June 28th, an order of Court was passed directing the liquidation of the affairs of the corporation, under Section 3981 of the Code (Civ. Code 1922).

On July 29th, the plaintiff, Stone, paid to Coddington, upon demand, the amount of the Stone item, and took an assignment from Coddington of all rights which his company had against the Winston Bank, incident to the transactions.

On August 26th, the Winston Bank proved and filed with the liquidating trustees of the Bank of Anderson, a claim for the credit balance due it by the Bank of Anderson, $9,224.57, *which included the Stone item.*

In reference to the business dealings between the Coddington Company and the Charlotte Bank, it appears that upon the flyleaf of the passbook in which the deposit made by Coddington was entered was the following printed matter:

"All items not payable in Charlotte received by the Union National Bank for collection or credit are taken at the customer's risk. · Said bank as agent for customers of depositors will forward such items to bank or correspondent, but assumes or incurs no responsibilty for neglect, default, or failure of such banks or correspondents, nor for loss or delay occurring in the mail. Should any bank or correspondent convert the proceeds or remit therefor in checks or drafts which are dishonored, or should the items or proceeds be lost by any cause mentioned herein as one for which said bank assumes no responsibility, the amount for which credit has been given will be charged back to the customer or depositor. Unless instructions to the contrary are given said bank, the customer or depositor hereby consents that items may be sent to the bank on which drawn, and relieves the said Union National Bank from responsibility for so doing.

"All checks and drafts are credited subject to payment. Items on Charlotte are credited subject to final payment through the Charlotte Clearing House."

There was evidence tending to show that no officer of the Coddington Company knew, until long after the transaction of the Stone item, that such printed matter was in their passbook; that it had never been called to their attention.

It appears that the Charlotte Bank was accustomed to employ signature cards for depositors, which contained an agreement to the same effect as the printed matter in the passbooks, but there was no evidence tending to show that such card had been signed by the Coddington Company in this particular instance.

In reference to the business dealings between the Charlotte Bank and the Winston Bank, the following depositor's agreement was in evidence:

"Depositor agrees as follows, and the bank accepts business on such conditions only:

"(1) Items drawn on this bank not good at the close of business day on which they have been deposited may be charged back to depositor. (2) Items received for collection or credit and not drawn on this bank are taken at depositor's risk, and should any such items be lost or should no returns be received within a reasonable time, such items may be charged back to depositor. (3) Items may be sent direct to bank upon which they are drawn or at which payable, or to or through collecting agents, for collection and remittance, and collecting agents shall have the right to send items direct to bank on which drawn or at which payable. (4) This bank and/or collecting agents may accept either cash or draft in payment of such items and will not be liable for failure to collect drafts so received. (5) Each collecting agent is the agent of depositor, but no agent shall be liable for any loss growing out of neglect, default, or failure of another agent. (6) Should any item be not paid or any agent fail to remit proceeds therefor, this bank may charge the item back to the depositor. Delivery to the bank of items for collection or credit shall constitute acceptance of these conditions by the depositor, in the absence of written notice to the contrary at the time."

And in connection therewith the following North Carolina statute was introduced:

"Any bank receiving for collection or deposit any check, note, or other negotiable instrument drawn upon or payable at another bank, located in another town or city, whether within or without this State, may forward such instrument for collection, direct to the bank on which it is drawn, or at which it is payable, and such method of forwarding direct to the payer bank shall be deemed due diligence, and the failure of such payer bank, because of its insolvency or other default, to account for the proceeds thereof, shall not render the forwarding bank liable therefor: *Provided, however,* such forwarding bank shall have used due diligence

in other respects in connection with the collection of such instruments."

His Honor, the Circuit Judge, held as follows upon the law of the case:

"To properly determine whether plaintiff is entitled to recover in this action, it is necessary to decide in whose right his cause of action in reality exists. This gives rise to a consideration of three questions, viz.:

"(1) Is plaintiff entitled to recover in his individual right?

"(2) Is he entitled to recover as the assignee of Coddington, Inc.?

"(3) Is he entitled to recover as assignee of Union National Bank?

"(1) Plaintiff has no standing in Court in his own right for two reasons: (a) On the deposit of the check in question if, as plaintiff alleges, it was deposited for collection, the relation of principal and agent was established and the Union National Bank became the agent for the holder and payee only, Coddington, Inc., and not for Stone, the drawer or maker. *Cohen v. Bank,* 262 Pa., 76; 105 A., 43; 4 A. L. R., 518. (b) When the check was paid by the Bank of Anderson and charged to the account of Stone, the transaction was complete in so far as Stone's liability for the debt was concerned, and by such payment Stone was fully discharged. *Merchants' National Bank of Baltimore v. Bank of Ninety Six,* 135 S. C., 339; 133 S. E., 910.

"(2) Nor is plaintiff entitled to recover as assignee of Coddington, Inc. While plaintiff undertakes to repudiate the entry on the passbook and the notation on the deposit slip used when the check was deposited in Union National Bank, the Court will take note of these as evidencing that the deposit was made for collection and not to pass the title thereto to Union National Bank. The question then arises whether the Court shall adopt and apply to the facts of this case, on this point, the New York rule or the Massa-

chusetts rule, inasmuch as the Courts of this State have adopted the New York rule *(Harter v. Bank,* 92 S. C., 444; 75 S. E., 697), this Court is bound thereby and must apply that rule in this case. As an incident to the application of that rule, Coddington, Inc., is in privity only with Union National Bank, and, therefore, has no cause of action against the defendant. *City of Douglas v. Federal Reserve Bank,* 2 F. (2d), 818; 44 A. L. R., 1425.

"(3) It is thus apparent that plaintiff must recover, if he may recover at all, in the right of Union National Bank but when plaintiff places himself in the situation which Union National Bank would occupy if it were plaintiff, he is bound by the special contract existing between Union National Bank and defendant by the statute of North Carolina."

As we construe the complaint, the plaintiff is not relying upon either the first or the second contention above stated, but upon his right as assignee, through the assignment of the Charlotte Bank to Coddington, of its cause of action against the Winston Bank, and upon the assignment of Coddington to him of Coddington's assigned cause of action against the Winston Bank.

The first and second contentions may be passed by, therefore, without the intimation of any opinion as to their correctness, and the issue determined *whether the Charlotte Bank had a cause of action against the Winston Bank,* which by successive assignments became vested in the plaintiff, Stone; and to that issue, and it alone, the attention of the Court will be directed.

These facts are conceded:

(1) On October 23d the Winston Bank forwarded the check to the Bank of Anderson, upon which it was drawn, for collection, and was received by the Bank of Anderson on October 26th.

(2) It was forwarded and received in accordance with an agreement of long standing between the two banks, that,

if the drawer of the check had sufficient funds on deposit to meet the check, it should be marked "paid" and charged to the drawer's account and the proceeds passed to the standing credit of the Winston Bank; all of which was done on October 26th.

(3) That under the agreement referred to, the Bank of Anderson was not under any obligation to make remittances of collected items immediately, but had the right to retain the collections until the Wednesday following the Monday (26th) upon which the collection, charge, and credit were made.

The question is, Did the Winston Bank comply with its duty in the premises, and if not, is it excused by the agreement which it had with the Charlotte Bank? If it did not and its treatment of the matter constituted a payment of the check to the Winston Bank, it became responsible to the Charlotte Bank as for money had and received, and, of course, to the plaintiff as assignee of the rights of the Charlotte Bank.

The general rule is that a forwarding bank, *in the absence of a special agreement,* is authorized to accept only legal tender from its collecting agency. *First National Bank of Rigby, Idaho, v. First Utah National Bank of Ogden, Utah Bank* (C. C. A.), 15 F. (2d), 913; certiorari denied 273 U. S., 760; 47 S. Ct., 473; 71 L. Ed., 878. *Leach v. Bank,* 202 Iowa, 875; 211 N. W., 527. *Federal Reserve Bank v. Malloy,* 264 U. S., 160; 44 S. Ct., 296; 68 L. Ed., 617; 31 A. L. R., 1261. *Douglas v. Bank,* 271 U. S., 489; 46 S. Ct., 554; 70 L. Ed., 1051.

In the case first cited, the Court said:

"The acceptance by the bank as collecting agent of anything else rendered it liable to the holder as though it had been collected in cash."

In the *Malloy case,* the Court said:

"When her agent, the Old Town Bank—the collecting bank being the agent of the holder—* * * did make

demand it was only authorized to receive money; * * * and the acceptance by the collecting agent of anything else rendered it as liable to the holder as though it had collected the cash."

It is clear that the Winston Bank did not comply with this duty presumptively imposed upon it; it accepted, not the cash, *but a credit upon the books of the Bank of Anderson which could not be enforced during the suspended period.*

But it is contended that the agreement between the Winston Bank and the Charlotte Bank should shield the defendant from liability. The pertinent provision in that agreement is:

"This bank and/or collecting agents may accept either cash or draft in payment of such items and will not be liable for failure to collect drafts so received."

The defendant bank did not instruct the Anderson Bank to do either and it did not do either. It certainly did not accept the draft of the Anderson Bank; equally certainly it did not accept the cash from the Anderson Bank; it did accept a credit of the Anderson Bank for the amount of the check, according to its long-standing custom, for the period of time from Monday the 26th to Wednesday the 28th. It could not, under its custom, have enforced payment from the Anderson Bank during that period of credit. If it could credit the Anderson Bank for two days, it could do so for two months or twelve months.

The case of *Briggs v. Bank,* 89 N. Y., 182; 42 Am. Rep., 285, is directly in point. There the plaintiff deposited with a New York bank, for collection, a check upon a New Jersey bank. The New York bank transmitted it directly to the drawee, the New Jersey bank, its collecting agent. The custom between the two banks was for the New Jersey bank to credit the account of the New York bank, with all collections made by it, *and settle therefor weekly.* On receiving the check, the New Jersey bank charged it to the

account of the drawer, and credited the New York bank with the amount. *The next day* the New Jersey bank suspended payment. It was held that the drawer of the check could recover from the New York bank the amount of the check. The Court said:

"That the check in question was charged up to the account of the agent, and credited by it to the defendant, in this collection account, and under the arrangement the defendant had no right to call upon the agent for a settlement of this account until the Tuesday following. There can be no doubt that the drawee of the check [the New Jersey bank] had the right under this arrangement to discharge the drawer, and substitute itself as debtor to the defendant for the amount, and that it did so, and that the defendant must be regarded as having accepted the responsibility of the drawee, upon its credit in the collection account, as payment of the check. Under these circumstances the liability of the defendant to the plaintiff for the amount, as for a collection effected, is beyond question."

In the case of *Pinkney v. Bank,* 68 W. Va., 254; 69 S. E., 1012; 32 L. R. A. (N. S.), 987; Ann. Cas., 1912-B, 115, the syllabus is:

"The general rule is that if a collecting bank forwards a check directly to the drawee bank, and by custom or agreement it is authorized to credit the collecting bank and remit, or settle at stated periods, its receipt of the check, debiting it to the drawer and crediting it to the collecting bank, constitutes payment, and renders the forwarding bank liable to its principal for the amount thereof."

It is suggested in the decree of his Honor, the Circuit Judge, that the plaintiff was a volunteer in the matter and is not entitled to protection. It may be true, and doubtless is, that Stone might have taken the position that his skirts had been cleared when the Bank of Anderson marked the check "paid" and passed the proceeds to the credit of the Winston Bank, after charging the item

to his account; but that could not deprive Stone of the right which any other person may have had, to purchase by assignment from Coddington the claim which he held by assignment from the Charlotte Bank against the Winston Bank. We do not know what business considerations may have induced him to clear Coddington of embarrassing connection with the transaction and assume the litigation. He paid his money for the claim, as he had the legal right to do, and is entitled to any relief which the Charlotte Bank may have had against the Winston Bank.

The judgment of this Court is that the judgment of the Circuit Court be reversed and that the case be remanded to that Court, with direction that judgment be rendered in favor of the plaintiff against the defendant for the sum of $1,099.74, with interest at 7 per cent. from October 26, 1925, and costs.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE, STABLER and CARTER concur.