ROBERT L. LEACH, State Superintendent of Banking, Appellant, v. CITY-COMMERCIAL SAVINGS BANK OF MASON CITY et al., Appellees.
No. 38246.

1256

MAY 15, 1928.

REHEARING DENIED APRIL 2, 1929.

*John Fletcher*, Attorney-general, and *Blythe, Markley, Rule & Clough*, for appellant.

*Clinton L. Nourse* and *Burnstedt & Hemingway*, for Stratford Grain & Supply Company, appellee.

*Henry H. Griffiths* and *Senneff, Bliss & Witwer*, for Central State Bank, appellee.

*L. A. Moe*, for Mier Wolf & Sons, I. Gindler, and F. Kropman, appellees.

*Marty, Butler & Thompson*, for Hegg & Sons, appellees.

*Garfield E. Breese*, for Mason City Cut Stone Company, Agnes C. Stevenson, and James F. Zimmerman, appellees.

*Fitzpatrick & Barlow*, for Mason City Bottling Works and Albert Burk, appellees.

*Bryant & Wolf*, for Weaver Bros., appellees.

*John C. Shipley*, for Park Thomason, appellee.

ALBERT, J.—I. The claims involved herein naturally divide themselves into three classes, which we will accordingly dispose of separately.

The first is the claim of the Stratford Grain & Supply Company, which arose from the following facts: This Grain Company was engaged in business in Stratford, Iowa, and shipped grain to the North Iowa Grain Company, at Mason City. It drew a sight draft, with bill of lading attached, on the North Iowa Grain Company for $1,425.22, ordering payment to the Farmers Savings Bank of Stratford. The Stratford bank in-

dorsed the same to the Iowa National Bank, of Des Moines, which latter bank sent the same to the City-Commercial Savings Bank of Mason City for collection, accompanied by a statement referring to this sight draft, saying:

"We enclose for collection and remittance in Chicago, New York or Des Moines exchange."

On receipt thereof, the City-Commercial Savings Bank made collection on the sight draft. It was presented at the First National Bank of Mason City, where the North Iowa Grain Company had a checking account, and was paid by the First National Bank, and the City-Commercial Savings Bank issued a draft for the collection, drawn on the Hanover National Bank, of New York City, and forwarded the same to the Iowa National Bank. Before this New York draft was paid, the City-Commercial Savings Bank of Mason City went into the hands of a receiver, who directed the New York City bank to refuse payment of the same. The New York City bank had on hand, to the credit of the City Commercial Savings Bank, a sum in excess of $7,000, over and above the outstanding drafts, on the date the receiver notified the New York bank not to honor any outstanding drafts, and there was returned from the New York bank to the receiver the sum of $12,083.79.

The Stratford Grain Company filed its claim in the receivership for the amount of such sight draft in due form, and within the time required by law, claiming preference for said claim. On January 11, 1926, the receiver filed a report classifying all claims, among which he classified the claim of the Stratford Grain Company as a general creditor's claim, and rejected the preference. On the day the receiver filed his classification of claims, the court entered an order fixing the 23d day of January, 1926, as the time for hearing on said report, and ordered that notice be given to all creditors, by publication, of the time so fixed for the hearing; and providing that objections to said report might be filed on or before said date, which notice was published, as provided by the order of court. On February 8th, the court entered an order approving and adjudicating the classification so made by the receiver. Thus, under this order, the Stratford Grain Company claim was classified as that of a general creditor.

On February. 15, 1926, the attorneys. for the Stratford Grain Company wrote the receiver, inquiring when this matter of classification of claims would come on for hearing, and, so far as the record shows, there was no response to this letter. On February 17th, the Stratford Grain Company filed an application for permission to file objections and make exceptions to the report of the receiver, and tendered a petition in equity, asking that the previous order made on February 8th be vacated and set aside, and that they be permitted to prove their claim as a preferred claim. To this application or petition the receiver filed a resistance in three divisions. In the first division, the substance of the claim is that, the court having fixed a time for hearing thereon, and providing for notice, which was given, and the claimants not having appeared thereto, they were defaulted, and the order made was final as to them, and they cannot now be heard to question the same. In the second division, they allege that the classification made by the receiver was the correct, true, legal, and proper classification of the claim, and ask that the application to reopen the hearing on said claim and set aside the order heretofore entered be dismissed at the cost of claimants. The matter was taken up by the court on stipulated facts, and some oral testimony taken, and the court in its decree said:

"The court finds from the evidence that said claim is in fact trust funds, and that the same is entitled to be classified as a preferred claim, and the receiver is hereby directed to so classify the same."

The receiver took exceptions to this holding, and appeals therefrom.

The first proposition urged by appellant is that, where one files a claim with the receiver of an insolvent bank, he thereby submits himself to the jurisdiction of the court, and must take notice of subsequent proceedings relative to the allowance of his claim; and we are cited to the case of *Henderson v. Farmers Savings Bank of Harper*, 199 Iowa 1156, as sustaining this proposition. Such is the holding in that case. The question involved therein, however, was whether or not, on application to set aside an order under a similar set of facts to those in this case, the court abused its discretion in refusing to set aside such order;

and it was held that such refusal on the part of the court was not an abuse of discretion. It is apparent, therefore, that, where an order of this kind is made, at least under a published notice, and application is made to set the order aside, the court has a discretion; and in the case at bar, this discretion was exercised, and the order set aside. There was no abuse of discretion in the action of the court in so doing.

There can be no question, under our holdings, that the City-Commercial Savings Bank was the agent in the collection of this sight draft; but, as heretofore shown, the instruction accompanying the sight draft was to collect and remit  in Chicago, New York, or Des Moines exchange. In our recent holdings we have held that, where the instructions to the agent are of this character, and the draft representing the collection is issued as directed in the letter of instruction, the duties of the agent are completed, under his instructions, and that, so far as the funds in the hands of the agent are concerned, they being commingled with the other funds of the bank, the trust relation ceases, and no preference is allowable under such circumstances. *Leach v. Battle Creek Sav. Bank*, 202 Iowa 875; *Leach v. Iowa State Sav. Bank of Manning*, 202 Iowa 894; *Valentine v. Andrew*, 203 Iowa 463. Under this line of cases, the Stratford Grain Company was not entitled to a preference, and was properly classified by the receiver as a general claimant, and the district court erred in allowing this claim as a preferred claim.

II. The claim of the Central State Bank arises from the following facts:

On the 5th day of May, 1925, the Central State Bank of Des Moines sent to the City-Commercial Savings Bank of Mason City for collection three checks, aggregating $4,240, drawn on  the Security National Bank of Mason City; four checks, aggregating $415.85, drawn on the City-Commercial Savings Bank; ten checks, aggregating $1,276.58, drawn on the First National Bank of Mason City. The four checks aggregating $415.85, drawn by customers of the City-Commercial Savings Bank against it, were charged to their respective accounts. The remainder of the checks were sent through clearance at Mason City, and the balance at the clearance was against the City-

Commercial Savings Bank in the sum of $5,474.63, which was paid by the City-Commercial Savings Bank to the clearing house by draft for that amount. On the following day, the City-Commercial Savings Bank forwarded to the Central State Bank its draft, drawn on the Hanover National Bank of New York City, in the sum of $1,634.83, covering all of the items sent for collection on the 5th of May, 1925. On May 6th, the Central State Bank forwarded to the City-Commercial Savings Bank the following: three checks drawn on the Security National Bank, aggregating $297.20; two checks drawn on the City-Commercial Savings Bank, aggregating $58.54; and eight checks drawn on the First National Bank, aggregating $1,617.82. The checks drawn on the City-Commercial Savings Bank were charged by it to its customers, and the remainder of the checks were sent through clearance on this date, the balance being in favor of the City-Commercial Savings Bank in the sum of $6,907.09, which was paid to the City-Commercial Savings Bank by draft. No further history of this draft appears in the record. On the following day, the City-Commercial Savings Bank forwarded to the Central State Bank its draft, drawn on the Federal Reserve Bank of Chicago, for $1,973.56, to cover all of said items.

On May 7, 1925, the Central State Bank forwarded to the City-Commercial Savings Bank, for collection, the following: three checks on the Security National Bank, aggregating $682; four checks on the City-Commercial Savings Bank, aggregating $131.09; and nine checks on the First National Bank of Mason City, aggregating $1,350.85. The checks drawn on the City-Commercial Savings Bank were charged to its customers, and the remainder of the checks were sent through clearance. On this date, the clearance was against the City-Commercial Savings Bank in a sum of $10,228.14, which was settled by draft. On the next day, the City-Commercial Savings Bank sent to the Central State Bank of Des Moines its draft for $2,163.94, drawn on the First National Bank of the Republic, of Chicago.

On May 8th, the collections sent by the Central State Bank to the City-Commercial Savings Bank consisted of 14 checks from the First National Bank, totaling $4,455.60, and 4 checks on the City-Commercial Savings Bank, in the sum of $81.35. The City-Commercial Savings Bank charged to its depositors'

accounts the checks drawn against itself, and sent the other checks through clearance; and the balance in clearance on that date was against the City-Commercial Savings Bank, in the sum of $25,585.39, which defendant paid to the clearing house by draft. All of these collections were accompanied by letters, with instructions:

"We enclose for collection return items listed below. * * * Surrender documents attached on payment only."

To summarize: All the checks sent by the Central State Bank of Des Moines to the City-Commercial Savings Bank of Mason City for collection that were drawn against the City-Commercial Savings Bank of Mason City for collection were by it charged to its customers' accounts. These checks amounted in all to $529.04. All other checks received by the City-Commercial Savings Bank were passed through clearance at Mason City, and on three days out of the four, the clearance was against the City-Commercial Savings Bank, and on the other day, in its favor, as above stated, in the sum of $6,907.09, for which it received a draft in that amount. As to these drafts, representing these four days' collections, sent by the City-Commercial Savings Bank to the Central State Bank, it is conceded that none of them were ever paid, and also that there were sufficient funds in the respective banks upon which they were drawn to have paid them, had the superintendent of banking not stopped payment thereon, and that whatever funds were in the respective banks upon which they were drawn have passed into the hands of the receiver.

Under this set of facts, the district court held that the Central State Bank was entitled to a preference for the respective amounts represented by these four drafts sent to the Central State Bank, and it is from this order that the receiver has appealed. As to all of the checks sent by the Central State Bank to the City-Commercial Savings Bank for collection, aside from the checks drawn by the customers of the City-Commercial Savings Bank, we have settled the rule in this state that the relation of principal and agent is thereby created between the two banks. Such was our holding in *Brown v. Sheldon State Bank*, 139 Iowa 83; *Messenger v. Carroll Tr. & Sav. Bank*, 193 Iowa 608; *Murray v. North Liberty Sav. Bank*, 196 Iowa 729; *Leach v. Iowa*

*State Sav. Bank of Manning,* 202 Iowa 95; *Leach v. Battle Creek Sav. Bank,* 202 Iowa 875; *Leach v. Farmers & Merch. Sav. Bank of Boyer,* 202 Iowa 881; *Andrew v. Farmers State Bank of Batavia,* 203 Iowa 1014; *Leach v. Iowa State Sav. Bank of Sioux City,* 204 Iowa 497; *Andrew v. Citizens State Bank of Eagle Grove,* 203 Iowa 345; *Leach v. City-Commercial Sav. Bank of Mason City,* 203 Iowa 398.

We must start the discussion of the question involved herein with the proposition that the relation that existed between these two banks was that of principal and agent. The question therefore is, What were the instructions of the principal to its agent with reference to the collection and return of the proceeds by the agent to the principal? Turning to the correspondence, we find it as above indicated:

"We enclose for collection and return items listed below. * * * Surrender documents attached on payment only."

If the agent has completely followed its instructions herein, it must necessarily follow that the ruling of the district court in allowing this claim as a preferred claim is erroneous. Evidence was introduced to show that, under instructions of this kind, it is the established custom and usage between banks to make return to the sender of the collection by forwarding to it a draft covering the amount collected. Among other things, it was stipulated in the record as follows:

"It is agreed and understood that the ordinary custom of banks in transmitting the proceeds from collection was by the issuance of drafts, unless cash is requested in the instructions."

The question left in this phase of the case is whether or not this original relation of principal and agent has been converted into that of debtor and creditor, by a custom existing between banks.

In the letter of instructions the directions were:

"We enclose for collection and return items listed below."

In the case of *Messenger v. Carroll Tr. & Sav. Bank,* 193 Iowa 608, a sight draft was drawn by the Moline Plow Company (claimant), and sent to the Carroll Trust & Savings Bank, with directions to collect and remit. Collection was made, and a draft

forwarded, drawn on the Continental National Bank of Chicago; but the Carroll Bank closed before the draft forwarded to the Moline Plow Company was presented for payment. We there held that the relation of principal and agent continued, and that the relation of debtor and creditor was not created. Later, in the case of *Leach v. Battle Creek Sav. Bank*, supra, we said, with reference to, and commenting on, the *Messenger* case:

"The direction of the forwarder in the *Messenger* case was to collect a sight draft and remit. Nothing whatever was said as to the kind or form of remittance. It was, therefore, the duty of the bank to remit cash or its equivalent. Since it did not do so, the cash collected was retained in trust by the agent for the benefit of the principal."

Just prior to this, in the same case, we said:

"As the agent could receive cash only in payment of the item received for collection, remittance must be made in cash or its equivalent, unless the principal, directly or impliedly, agreed to accept a draft or some other medium of payment in lieu thereof."

In the *Leach* case, the directions were to remit by draft. In the case at bar, the means or method of remittance were not specified; and, in the absence of such direction or agreement, the relation of principal and agent was continued, and the relation of debtor and creditor would not arise. Under this rule, the relation between the Central State Bank of Des Moines and the City-Commercial Savings Bank of Mason City continued at all times to be that of principal and agent, and the funds received by the Mason City bank would be held in trust for the Des Moines bank.

It is sought to avoid this result by reason of the fact that there is a general custom between banks that, where the instructions are of the character of those in this case, the remittance is made by draft, and therefore the rule suggested in the *Messenger* case, supra, does not apply. Evidence was introduced to establish this proposition of custom, and it was stipulated between the parties that such is the custom between banks. It is obvious from our opinions heretofore filed in matters of this kind that the relation of principal and agent, and not that of

debtor and creditor, is created where the instructions are to remit by draft, and such draft is forwarded. The converse of this is equally well settled: that if the order is simply to remit, without specifying the means or manner of such remittance, then the relation is not changed from that of principal and agent to that of debtor and creditor, upon the forwarding of the draft.

While the question of custom is apparently new in the instant case, it was necessarily involved in many of the cases heretofore decided; and, while the court has made no previous expression on the subject, it has been considered in various cases, and we have failed to adopt or recognize custom as applicable to the situation before us. The rule in this kind of a case has been fairly well settled in this state, and we do not care to complicate it further by injecting this question of custom. Universal custom and usage become, in a sense, a part of the law, and are so considered by us; but we do not now care to disturb the well settled rules on a proposition of this character by attaching thereto this rule with reference to custom.

But, regardless of the question of custom, it is insisted that, because of the checks sent through clearance on these various days, the balance of the clearance on one day was in favor of  the City-Commercial Savings Bank, and therefore a trust was created thereby, to the amount of that balance. Were it shown that the balance of this day's clearance in favor of the City-Commercial Savings Bank was paid in cash, it would possess the elements of a trust; but, unfortunately for appellee bank, the record shows that this balance was settled by draft, and it is not shown that this draft was ever paid, or on what bank it was drawn, or even that the drawee bank was solvent. In other words, there is no showing that the proceeds of this draft ever came into the hands of the City-Commercial Savings Bank or its receiver. It is well settled in this state that, in order to establish a claim of this kind, the proceeds of these collections must be traced into the hands of the receiver, thereby augmenting the general assets in his hands. The last expression of this court on this question was *Andrew v. State Bank of New Hampton*, 204 Iowa 878. Having failed thus to show that the general assets in the hands of the receiver were increased by the proceeds of any of these checks, the Central State Bank has failed to make out a case, and the court erred in giving it a preference.

There are some small items, however, in connection with this claim that require attention. Among the collections sent were checks amounting to $529.04, drawn by customers of the City-Commercial Savings Bank, together with a check for $57.79, drawn by the city treasurer of Mason City against its deposit in this bank. These checks were all charged by the City-Commercial Savings Bank against its customers, thereby reducing the amount of each customer's deposit by the amount of the check thus issued. By this process, each customer's account being thus reduced, such customer, in the final liquidation of this bank, would receive no dividend upon the amount represented by the check which was thus charged to his account. The Central State Bank being ostensibly the recipient of the amount thus charged against the customer's account, we think that, in equity, it should be entitled to draw the dividend which the receiver of the bank would have paid the depositor on this amount, had it remained to the credit of the depositor in his account.

As between the Central State Bank and the other creditors of this defunct bank, it would be wholly unjust and inequitable to give the other creditors the benefit of these dividends to be paid by the receiver. The equities in this proposition are with the Central State Bank, and it is ordered that the dividend which would accrue on the amounts represented by these different checks issued by the depositors, had the same not been charged to the depositor's account, shall be paid to the Central State Bank.

Aside from the matters referred to in this paragraph, the district court erred in allowing these claims as preferred; and under our holding, the claims of the Central State Bank, as claimed in the last preceding paragraph, can only be allowed as general claims against the assets in the hands of the receiver.

III. A somewhat extended statement of the facts is necessary to a fair understanding of the questions involved as to the third class of claims, consisting of the balance of claimants interested in this appeal, thirteen in number.

Each of these claimants had, at times previous to the receivership of this bank, borrowed money from the bank, and given their promissory notes therefor. These notes, with many

 others, were in the hands of the Federal Reserve Bank of Chicago, at the time the City-Commercial Savings Bank closed and a receiver was appointed. The City-Commercial Savings Bank owed the Federal Reserve Bank, at that time, about $225,000. It had promissory notes and other evidences of indebtedness to secure the same in an amount nearly double the indebtedness of the City-Commercial Savings Bank to the Federal Reserve Bank. There is a dispute as to whether the evidences of indebtedness in the hands of the Federal Reserve Bank were paper that had been rediscounted, or simply collateral, or whether the Federal Reserve Bank actually had any interest whatever in this paper. If we find that question material, further attention will be given to it later in the opinion.

After the City-Commercial Savings Bank went into the hands of a receiver, the Federal Reserve Bank proceeded to realize on some of the paper it had received from it. Suits were commenced by the Federal Reserve Bank for the sum of said promissory notes; but, by reason of a settlement made by the Federal Reserve Bank with the receiver, the notes on which those actions were founded went into the hands of the receiver, and the actions commenced therein were dismissed.

The City-Commercial Savings Bank was a member bank with the Federal Reserve Bank, holding stock therein to an amount of about $13,600; and on its failure, the Federal Reserve Bank canceled this stock, and credited the same on the indebtedness owed by the City-Commercial Savings Bank to it. The record is not quite clear; but, as we understand it, out of the commercial paper of the City-Commercial Savings Bank held by the Federal Reserve Bank, it collected enough, together with the appropriated stock, to pay the indebtedness owed by the City-Commercial Savings Bank to it; and thereupon, the balance of the commercial paper held by the Federal Reserve Bank, amounting to about $214,000, was returned to the receiver of the Commercial Savings Bank. In the adjustment made by the receiver, where it held a note against any party who was shown by the books of the bank to be a depositor, it allowed the usual set-off.

Notes of each of these thirteen claimants were in the hands of the Federal Reserve Bank at the time of the closing of the

City-Commercial Savings Bank, and the Federal Reserve Bank proceeded to collect the amount due on such notes. The evidence shows that the makers of each of these notes were notified by the Federal Reserve Bank that it was the holder thereof, and an agent of the Federal Reserve Bank interviewed each of these parties and demanded payment thereof, representing that the Federal Reserve Bank was the owner thereof, and that the maker was not entitled to any set-off or counterclaim against the Federal Reserve Bank. Whereupon, each of these thirteen claimants, under protest, paid to the agent of the Federal Reserve Bank the amount due on his note, each note being marked "paid," and returned to the maker. After the closing of the City-Commercial Savings Bank, none of these thirteen notes ever came into the hands of the receiver, before or after payment.

It is conceded that each of these thirteen claimants had deposits in various sums in the City-Commercial Savings Bank at the time it closed, and each of these claimants is now seeking a set-off, by reason of these facts. The district court allowed each one a set-off, and held that, where the amount on deposit was in excess of the amount due on the note, the set-off was allowed, and the difference between the two was allowed as a depositor's claim. Where the amount due on the note was in excess of the deposit, the receiver was ordered to pay back the difference between the two. The result of this decision, therefore, was to allow the claimant 100 per cent on his deposit if it was less than the amount due on the promissory note, and if more, 100 per cent on the deposit up to the amount due on the note. It is from this order by the court that the receiver has appealed.

The record shows that the commercial paper returned by the Federal Reserve Bank to the receiver, amounting to approximately $214,000, was all either collateral, rediscounts, or substitutions from rediscounts. The record does not show very clearly whether the notes of each of the respective claimants herein were with the Federal Reserve Bank as collateral or rediscounts. In fact, we have no way of knowing just what the relation of the Federal Reserve Bank to each of these notes was, other than that the assistant cashier testifies that, when the City-Commercial Savings Bank needed more money or credit,

it usually put in groups of $50,000 various notes held by the bank with the Federal Reserve Bank, either as collateral or rediscounts. But, however this may be, under the evidence in the case it must be concluded that the Federal Reserve Bank was rightfully in the possession of this commercial paper, including the notes of the respective claimants. The question we have before us, therefore, is whether or not, under this set of facts, the district court was authorized to grant to each of these claimants the set-off provided for in its decree.

The doctrine of set-off is too well settled to need citation of authority. The receiver concedes the doctrine, but claims that it has no application to the facts of this case. The district court was of the opinion that, as the receiver had allowed such set-offs to all of the makers of the promissory notes whose notes had been returned by the Federal Reserve Bank to the receiver, in equity these claimants stood on the same footing, and should be allowed set-offs accordingly. While this equity appeals very strongly to us, at the same time, if it is to be sustained, some principle of law or equity must be discovered on which it can rest.

We are confronted, at the threshold of the case, with the naked fact that each of these claimants had outstanding a promissory note, and that they paid the same to the Federal Reserve Bank, which claimed to be the owner thereof. It is undoubtedly true that, had each of these claimants' notes remained in the assets of the City-Commercial Savings Bank, and passed into the hands of the receiver, there could be no question that they would have been entitled to a set-off. It is equally true that, where the bank disposed of these notes, and they passed into the  hands of an innocent purchaser for value, before maturity, a plea of set-off or counterclaim would not be available against such holder. *Johnson v. Barney & Co.*, 1 Iowa 531; *Voss v. Chamberlain*, 139 Iowa 569; *State Bank of Halstad v. Bilstad*, 162 Iowa 433. It is equally well settled in this state that, where commercial paper is rediscounted or put up as collateral, the holder is a bona-fide holder in due course. If, as asserted by the claimants, the Federal Reserve Bank was not a bona-fide holder in due course, then we see no reason why this set-off was not available to the maker of the note, as against the Federal Reserve Bank. The claimants failed to contest this question with the

Federal Reserve Bank, but chose rather to pay their notes; and in so doing, the payment was voluntary, even though paid under protest. *Dickerman v. Lord & Smith*, 21 Iowa 338; *New York Life Ins. Co. v. Chittenden & Eastman*, 134 Iowa 613; *Harbeck v. City of Sioux City*, 199 Iowa 763; 21 Ruling Case Law 141—144, and cases cited.

The doctrine of set-off, as applied to adjustments in insolvent banks, is peculiar, in that it is an adjustment of a claim that each holds against the other; and in this particular case, the claimants being depositors in the bank, the bank was indebted to them to the amount of their deposits, and they had a right, under the doctrine of the cases, to set off this amount against any indebtedness that the bank held against them. If it be assumed, for the sake of argument, that the Federal Reserve Bank was not a holder in due course, it was the holder of a claim that the City-Commercial Savings Bank formerly had against the makers of these notes; and when the Federal Reserve Bank sought to collect on the notes, the claimants should have asserted their set-off, and refused to pay the notes. Since they have, however, voluntarily paid the notes, even though under protest, the right of set-off was extinguished. The status of the claimants to the receiver of the bank, at the time the receiver took charge, and ever since, has been, and is, that the claimants, as depositors, have claims against the assets in the hands of the receiver for the amount representing their deposits, but the bank did not then, nor does it now, have any claim whatever against the claimants against which the deposits could be used as set-offs. At this point, therefore, it must be concluded that there existed no right of set-off in favor of any of these claimants.

But it is urged on the part of the claimants that, by reason of false and fraudulent representations made by the agent of the Federal Reserve Bank, they were induced to pay these notes; and to this question we will, therefore, direct our attention.

It is stipulated,—if not, it is fully and satisfactorily proved by the evidence,—that the agent of the Federal Reserve Bank did represent to the makers of these notes that the Federal Reserve Bank was the bona-fide holder of said notes in due course, and that the makers of the notes have no defense; but they insist that, under the record in the case, it is shown that these

1270

statements were false. To our minds, under the peculiar situation existing in this case, the fact that false and fraudulent representations were made by the agent of the Federal Reserve Bank which claimants believed, relied, and acted upon, has no bearing on this question, one way or another. Such facts might be available as an estoppel against the Federal Reserve Bank under proper conditions, but we are unable to see how the receiver of the City-Commercial Savings Bank is affected thereby. Whether the Federal Reserve Bank would be liable for the fraud of its agent is not before us. If the relation of principal and agent existed between the City-Commercial Savings Bank and the Federal Reserve Bank, it might become important to determine whether the principal was bound by the false representations of its agent, and thus the right of set-off kept alive; but as, under the record, it cannot be found that such relation existed, we give no further attention to this question.

Our conclusions are, therefore, that, as to the claim of the Stratford Grain & Supply Company, the court erred in holding it entitled to a preference, and its classification will be that of a general creditor.

As to the claim of the Central State Bank, with the exception of the items specified, the court erred in its ruling, and, aside from the specified items, its claim is that of a general creditor.

As to the thirteen claimants, the court erred in allowing them the set-offs, their claims being only that of depositors for the amounts shown by the books of the bank to be the amount of their deposits.—*Modified and affirmed as to Central State Bank; reversed as to other claimants.*

STEVENS, C. J., and DE GRAFF, MORLING, and WAGNER, JJ., concur.